ROGER SIDDALL, Respondent, *v.* CLETUS KEATING et al., Appellants.

First Department, May 12, 1959.

*Albert R. Connelly* of counsel (*David L. Foster* with him on the brief; *Cravath, Swaine & Moore,* attorneys), for appellants.

*O. John Rogge* of counsel (*Murray A. Gordon* with him on the brief; *Rogge, Zucker, Fabricant & Gordon,* attorneys), for respondent.

RABIN, J. This action was brought by plaintiff, a former law partner of defendants (excepting James H. Herbert) for an accounting and damages. The complaint alleged breach of a partnership agreement and conspiracy to exclude plaintiff from a new law partnership formed in 1949. Plaintiff demanded damages flowing from those claims and also a share of all assets and earnings of the successor partnership firms, as an incident to the dissolution of the 1948 firm.

The learned Referee found against plaintiff on the claims of breach of agreement and conspiracy, and since there is no cross appeal, there is here involved only that portion of the decree which directs defendants to account to plaintiff "for the fees and earnings of the successor firms of the defendants from 1949 to date attributable to plaintiff's contribution to the good will of the defendants' law partnership."

In 1921 plaintiff became employed as a law clerk in the firm of Kirlin, Woolsey, Campbell, Hickox and Keating. This firm was one of the several successors to the original firm known

as Convers & Kirlin established in the early 1890s. Kirlin, who had gained international recognition as an admiralty lawyer, left active practice in 1922 and died in 1927. It was not until 1936 that plaintiff was admitted to partnership in the firm which then bore the name, Kirlin, Campbell, Hickox, Keating and McGrann. In the ensuing years and until around 1947 plaintiff was an active partner in the Kirlin firms. In June, 1947 plaintiff being in poor health and there being some question as to whether he might give up the law and devote his talents to the field of writing, an agreement was signed under which plaintiff for the balance of 1947 would continue as a partner, retaining his 6½% participating interest. Pursuant to the same agreement a new partnership was formed in 1948 and plaintiff continued as a partner but with only a 4% participating interest. This 1948 agreement contained specific provisions as to what a partner's rights would be upon retirement.

In May, 1948 plaintiff, because of his poor health, left the office for an extended vacation and never worked thereafter in the Kirlin firm. Defendants dissolved the existing firm as of December 31, 1948 and formed a new partnership, continuing the name of Kirlin, Campbell, Hickox & Keating, which consisted of all the partners of the 1948 firm other than plaintiff, but with the addition of a new partner, defendant James H. Herbert. Plaintiff claims that his exclusion from the new firm was the result of deliberate design and conspiracy on the part of defendants. He says it was the understanding that he was to continue as a partner until he had had a reasonable opportunity to see whether or not he was wasting his time in the writing field. According to defendants however, the understanding was that plaintiff would withdraw from the partnership not later than December 31, 1948.

Prior to the trial before the Referee the parties entered into a settlement agreement under which plaintiff released and discharged defendants from all claims with respect to the earnings of the 1948 firm and predecessor firms and of all matters originating in such firms for which the successor partnerships had collected fees, thus leaving open on the accounting phase of the case, only the claim for good will.

As indicated, the Referee rejected plaintiff's claims of breach of agreement and conspiracy, but held that the defendants must account to plaintiff for fees and earnings attributable to good will. The correctness of the latter ruling presents the only issue for determination.

Passing for the moment the factual aspects of the present case and considering, in a purely abstract sense, the question

of good will as relating to dealings among members of the legal profession, it may be observed generally that good will is not ordinarily attributable to a law partnership. At least that would appear to be the rule followed in controlling New York decisions (*Masters* v. *Brooks,* 132 App. Div. 874, 879–881; *Trenbath* v. *Platt,* 20 N. Y. S. 2d 244, 249, affd. 264 App. Div. 708, motion for leave to appeal denied 288 N. Y. 741; *Mendelsohn* v. *Equitable Life Assur. Soc.,* 178 Misc. 152, motion for leave to appeal denied 264 App. Div. 731; *Lynch* v. *Bailey,* 275 App. Div. 527, 532, affd. 300 N. Y. 615). As aptly stated in the *Mendelsohn* case (p. 154): "A professional partnership, whose reputation depends upon the individual skill of the members, has no good will to be distributed as a firm asset on its dissolution." Moreover an allowance for good will to a retiring partner based upon future earnings, where there is no sharing of service or responsibility, would seem to be in violation of canon 34 of the Canons of Professional Ethics.

But assuming, although not so holding, that a partner, upon dissolution, would be entitled to compensation representing his share of the good will of the partnership — an item incidentally which would seem almost impossible of ascertainment in the case of this law partnership — we reach the conclusion on the record before us and for reasons to be indicated, that plaintiff may have no recovery for good will.

In determining whether is was ever agreed or contemplated that plaintiff, or for that matter any partner of the Kirlin firm, would receive payment for good will upon death or retirement, we must look first to the partnership agreement itself. The written 1948 partnership agreement, to which plaintiff was a party, provided in paragraph 7, for the distribution to a retiring partner of earnings of future firms derived from unconcluded matters, but significantly made no provision for a distribution based on good will. It is clear therefore that there was no express agreement on which plaintiff may rely in support of his claim for good will.

Nor do we find in the record anything from which such an agreement may be implied. If there could be any doubt as to the intention of the parties concerning good will it would seem to have been resolved by the history and practices of the Kirlin firms in this respect. During the entire history of these firms, no retiring partner, or estate of a deceased partner, ever received any payment in respect of partnership good will; nor did plaintiff or any other incoming partner ever make any payment for the privilege of using the name of the firm of which he

became a member. Good will was never reflected as an asset in the partnership accounts. Thus over the years all partners, insofar as good will was concerned, gave to the partnership arrangement a practical construction or interpretation which must be regarded as of controlling importance (*Di Leo v. Pecksto Holding Corp.*, 304 N. Y. 514; *Brooklyn Public Library v. City of New York*, 250 N. Y. 495; *City of New York v. New York City Ry. Co.*, 193 N. Y. 543, 548). Based, therefore, on the custom always followed by the Kirlin firms, with the acquiescence of all partners, including plaintiff, it would be impossible to imply an agreement to pay a retiring partner for good will.

Nor may plaintiff on equitable principles claim good will stemming from use of the name " Kirlin ". It is important at this point to again note that when plaintiff became a partner in 1936, Kirlin had long since died. Plaintiff having paid nothing for the use of the Kirlin name, which the partnership had already acquired, there is no justification for his present demand to be paid for the continued use of that name.

Plaintiff can hardly claim that defendants did not deal fairly with him in view of the finding of the Referee that they " did more than they were morally or legally compelled to do in their efforts to aid plaintiff, both prior and subsequent to 1947, when they first offered to continue to pay plaintiff his share of partnership earnings and to bear all necessary medical expenses that he might incur during a year's absence ".

The award for good will as allowed to plaintiff by the Referee and to be fixed on the accounting, would have to be measured in the light of earnings of the ensuing partnerships and consequently would have to be carved out of fees received from the clients of those partnerships. Any such award would, as indicated, seem contrary to New York law and very likely in violation of the Canons of Ethics. In any event it would not be warranted on the facts of this case, which conclusively negative the existence of an agreement, real or implied, for payment based upon good will and in fact indicate a contrary intention.

Interlocutory decree appealed from, insofar as it directs an accounting, should be modified on the law and on the facts to eliminate the direction to account contained in the first and third decretal paragraphs, and the complaint should be dismissed in its entirety, with costs and disbursements to appellants.

BOTEIN, P. J., M. M. FRANK, McNALLY and STEVENS, JJ.. concur.

Interlocutory decree, insofar as it directs an accounting, unanimously modified, on the law and on the facts to eliminate the direction to account contained in the first and third decretal paragraphs, and the complaint dismissed in its entirety, with costs and disbursements to appellants.

Settle order.