GERALD M. STEFANSKI *vs.* ROBERT J. GONNELLA.

Barnstable. November 4, 1982. — March 21, 1983.

Present: GRANT, GREANEY, & KASS, JJ.

*Partnership,* Accounting, Good will. *Good Will.*

In an action for an accounting upon dissolution of a partnership, which
had been formed for the conduct of an accounting practice, the judge
did not err in concluding that the value of the partnership's good will
at the time of dissolution was a sum equivalent to the gross billings of
the partnership for the last twelve-month accounting period before
dissolution, especially where the partnership books had consistently
carried good will as an asset at an amount equal to the gross billings
for the last previous twelve-month accounting period. [503-504]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 10, 1980.

The case was heard by *Travers, J.*

*Warren G. Miller (Charles E. McDermott* with him) for
the defendant.

*George A. Fairbanks, III,* for the plaintiff.

KASS, J. Among several accounting matters which re-
quired resolution upon the winding up of their two-man
partnership, the ones that count for purposes of this litiga-
tion are whether the plaintiff, Stefanski, was entitled to a
distribution for good will and, *if so, how much.*

Ironically, the purpose for which the parties formed the
partnership was to practice accounting. Stefanski and his
erstwhile partner, the defendant Gonnella, became ac-
quainted in 1966 while they were students at the University
of Massachusetts. They did not team up until 1977. In the
meantime Stefanski worked in Minnesota for the Internal
Revenue Service. Gonnella became a certified public ac-
countant in 1975 and that year bought a practice in Oster-

ville for $36,000, a figure equal to the seller's gross billings for the year preceding the purchase.[1] The accountant who sold to Gonnella agreed not to compete with him for ten years and Gonnella received the right to hold himself out as the successor in the practice.

Accounting business grew sufficiently for Gonnella that he was moved, in February, 1977, to get in touch with his old friend, Stefanski, to propose that Stefanski come east to join him as a partner in the Osterville practice. That feeler matured into an oral agreement under which Gonnella and Stefanski agreed that the value of Gonnella's practice was $50,000, that this constituted the value of the good will of the practice, and that Stefanski was to buy into the partnership for $25,000. On July 1, 1977, the parties launched their partnership. The partnership books carried good will as an asset at $50,000.

Although their practice prospered in a fiscal sense, Gonnella and Stefanski did not get on well. On June 20, 1980, Gonnella notified Stefanski in writing that the partnership was terminated effective the next day. Stefanski withdrew, and Gonnella carried on as a sole practitioner at the old stand. Gonnella held on to virtually all of the partnership's clients, although he gave them a choice of following him or Stefanski. That choice was, however, heavily loaded in Gonnella's favor. He retained the office, and telephone calls and clients came there first.

We have drawn this history from the findings of the trial judge, which we accept as they are not clearly erroneous, Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), with occasional embellishment from the record. Having determined that the partners had carried good will at $50,000 and had agreed that this was what Stefanski was paying for, the judge turned his attention to whether a professional partnership could, as matter of law, carry good will as an asset. He concluded it could. Proceeding on that premise the

---

[1] The sales price for the practice was later reduced to $34,000 by a post-closing adjustment when the seller repurchased one account.

judge made findings as to the value of the partnership's good will and, with adjustments for other items to be accounted for, entered a judgment for Stefanski of $43,341.95.

There is a line of opinions that professional partnerships acquire no good will which may be distributed upon dissolution because the reputation of the partnership evolves from, and depends upon, the skill of its individual partners, be they accountants, lawyers, doctors, dentists or architects. See, e.g., *Foss* v. *Roby*, 195 Mass. 292, 297 (1907); *Lyon* v. *Lyon*, 246 Cal. App. 2d 519, 524-525 (1966); *Cook* v. *Lauten*, 1 Ill. App. 2d 255, 260-261 (1954); *Siddall* v. *Keating*, 8 A.D. 2d 44, 46-47 (N.Y. 1959); Annot., 65 A.L.R. 2d 521, 529 (1959). However, after a bow to *Foss* v. *Roby, supra,* it was said in *Rutan* v. *Coolidge,* 241 Mass. 584, 597 (1922), that the existence and value of good will upon dissolution of a partnership is a question of fact. Accordingly, the court in *Rutan* permitted a master to find value upon dissolution for the good will of a partnership which practiced architecture. "[I]t could not be said of the firm . . . that as matter of law it had no good will in this possibility of future business; it was a question of fact." *Ibid.*

No case in Massachusetts after *Rutan* has departed from the view that value may be ascribed to the good will of a professional partnership upon dissolution. See, e.g., *Whitman* v. *Jones,* 322 Mass. 340, 343 (1948), in which the court said, in the context of a business partnership but without qualification, "In the absence of an agreement to the contrary the good will of a partnership is an asset of the firm, and a partner appropriating it to his own use must account for its value." Elsewhere that principle found approval. So in *Evans* v. *Gunnip,* 36 Del. Ch. 589, 594 (Sup. Ct. 1957), the court expressly rejected cases which held that there is no value to the good will of a professional partnership, followed *Rutan* and *Whitman,* and determined that there was evidence to support a finding of good will, even though upon dissolution the partners could compete with one another, in a partnership which practiced accounting. See

also *Wyler* v. *Commissioner*, 14 T.C. 1251, 1259-1260 (1950) (accountants); *Durio* v. *Johnson*, 68 N.M. 82, 84-85 (1961) (veterinarians); *Smith* v. *Posner*, 85 Misc. 2d 934, 935-936, aff'd, 49 A.D. 2d 829 (N.Y. 1975) (medical doctors); *Cohen* v. *Biernoff*, 84 A.D. 2d 802 (N.Y. 1981) (accountants); *Berg* v. *Settle*, 70 Wash. 2d 864, 867-868 (1967) (radiologists).

There was evidence in the case at bar that Gonnella, initially, and later both parties, placed value on good will of the accounting practice. The judge was right in concluding that Stefanski and Gonnella could ascribe value to good will in their accounting practice and that they had done so.

Gonnella testified that he treated his adjusted purchase price — equal to one year's gross billings — as good will and on his personal income tax return reflected the amount paid by Stefanski to join the practice as gain on the sale of a capital asset. When Stefanski and Gonnella teamed up, they carried good will on their books as an asset worth $50,000. The amount was an approximation of gross billings for the preceding twelve months at the time of the formation of the partnership.

Good will is "any privilege that gives a reasonable expectancy of preference in the race of competition." *In re Brown*, 242 N.Y. 1, 6 (1926). It is hard to fix the value of good will with mathematical precision. *Moore* v. *Rawson*, 185 Mass. 264, 272-273 (1904). The time a firm has been in business, its character, success, average profits, its customers or clients, its location and the probability that it will continue are factors which come into play. *Ibid. Murray* v. *Bateman*, 315 Mass. 113, 115 (1943). A rule of thumb of the sort used by the parties here, a multiple of one times the preceding year's gross billings, is artless, but not irrational. The particular partnership which required valuation was, after all, a simple one. Stefanski and Gonnella are certified public accountants and hold themselves forth as having some sophistication about a question they deliberately chose to deal with in an unsophisticated fashion. Thus, while we decline to endorse the use of a year's gross billings as a yard-

stick for the value of good will of a partnership (surely the percentage of gross billings collected and the profit which partners retain from gross billings must bear on how useful the measure is), we are also disinclined to say that parties may not use such a method.[2] One times gross billings may not be materially different from three times net profits and the parties, skilled as they were, may have known that.

It remains to consider whether there was a basis in the record for the judge to find that the value of the good will upon termination was $88,675. There was testimony that this figure represented gross billings for the last twelve-month accounting period before Gonnella terminated the partnership. The practice Gonnella had adopted, first alone and then in partnership with Stefanski, of equating the good will of the accounting practice with gross billings for the last previous twelve-month accounting period warranted the judge in finding that the same method, on the peculiar facts of this case, should be applied upon termination of the partnership.

It is not necessary to review other items and set offs to be accounted for which the judge considered and resolved. Those were not contested on appeal.

*Judgment affirmed.*

---

[2] For an example of a more sophisticated approach to the valuation of good will, see 5 Am. Jur., Proof of Facts 507 (1960).