GARY J. MARCHAND *vs.* DAVID W. MURRAY.

No. 87-7.

Middlesex.  October 16, 1987. — July 26, 1989.

Present: ARMSTRONG, SMITH, & WARNER, JJ.

*Partnership*, Accounting, Dissolution, Good will. *Good Will. Value. Evidence*, Offer of compromise, Value. *Witness*, Expert. *Interest.*

At the trial of a civil action, sufficient evidence was presented from which the jury could find that the plaintiff and defendant entered into a partnership and that a certain restaurant was an asset of the partnership. [612-613]

There was no merit to the defendant's contention on appeal in an action for an accounting on the dissolution of a partnership, that the jury's award of damages, based on the evidence presented and the judge's instructions, was irrational. [613-614]

At the trial of a civil action, the judge properly ruled that certain statements of the defendant, offered by the plaintiff to prove the existence of a partnership, did not constitute an inadmissible offer of settlement of the matters in issue. [615]

No abuse of discretion was shown at a civil trial in the judge's qualifying a plaintiff's witness as an expert to testify on the value of a business. [615-616]

In an action seeking an accounting on the dissolution of a partnership there was no error in the judge's determination that the equities of the case did not warrant the award of prejudgment interest to the plaintiff, whose breach of the partnership agreement had caused the dissolution. [616]

CIVIL ACTION commenced in the Superior Court Department on November 1, 1982.

The case was tried before *Paul A. Chernoff*, J.

*Edward Woll, Jr.*, for the defendant.

*Joseph P. Donahue, Jr.*, for the plaintiff.

ARMSTRONG, J. This is an action for an accounting on dissolution of a partnership. The defendant (Murray) continues to operate the business enterprise (a Burger King franchise on Drum Hill Road in Chelmsford) that the plaintiff (Marchand)

claims to be an asset of the partnership. Murray has appealed from a judgment entered on a jury verdict (by way of answers to special questions) awarding Marchand $63,500 for his share of the partnership assets. Marchand has appealed from a ruling by the judge that he was not entitled to prejudgment interest on the award.

1. *The motions for a directed verdict and judgment notwithstanding the verdict.* Murray's principal argument on his motion for a directed verdict and for judgment notwithstanding the verdict is that there was no evidence from which the jury could find that the partnership ever came into existence[1] or, if the partnership is considered to have existed apart from the Chelmsford Burger King restaurant, that the restaurant ever became an asset of the partnership. There was evidence from which the jury could properly draw the inference, however, that Murray and Marchand actually entered into an oral partnership agreement, on a 50-50 basis, through which they would cooperate in developing a series of Burger King franchise restaurants in Massachusetts along the New Hampshire border. Murray would be obligated to buy the land and to construct the Burger King buildings through a New Hampshire corporation (which would lease the completed locations to the Burger King restaurants). Marchand would be obligated to come up with a $250,000 cash payment to Murray for each restaurant that the partnership developed or acquired and would be the operating partner thereof. ("Operating partner" is a term used in the Burger King franchise agreements to mean the person charged with day-to-day operational responsibility for the franchised restaurant.)

On this view, the Chelmsford restaurant could be considered an asset of the partnership, although the parties contemplated structuring it as a corporation, with each partner holding an equal number of shares, and although the parties discussed altering their arrangement so that Marchand, in return for a reduced financial contribution, would own a smaller share of

---

[1] Murray's position was that Marchand's failure to come up with his contribution to capital (whether $100,000 or $250,000) foreclosed a finding of partnership formation.

the restaurant. That the latter plan came to naught, and that no payment of any amount was ever made to Murray by Marchand, did not necessarily require the jury to conclude that the partnership was not in existence during the year that the restaurant was planned, constructed, and prepared for opening day. Indeed, this apparently was the view taken by the jury, which found that there was a partnership and that Marchand was in breach of his obligations thereunder.

2. *Jury instructions.* The judge instructed the jury that they were to deduct from Marchand's share of the partnership assets any damages caused by his breach, any amount that he owed to the partnership, and any share of the partnership's good will. See the Uniform Partnership Act, G. L. c. 108A, §§ 38(1)(*c*)(II). Murray argues that, on the evidence before the jury, a correct application of those instructions would necessarily result in a negative figure owed to Marchand and, thus, that the jury's determination of Marchand's share lacked an evidentiary basis. There are at least two fallacies in Murray's reasoning on this point. First, he neglects to include in the partnership's assets the $250,000 which Marchand could be found to have owed, this being a necessary corollary to Murray's deduction of that amount from Marchand's share.

Second, he defines "good will" in the most expansive possible way, as the value of the franchise (an expert testified that this was $780,000) less the net of tangible assets and liabilities. In situations where a business's only valuable intangible asset is good will, this formula provides a reasonable approximation of its value. See *Donahue* v. *Draper*, 22 Mass. App. Ct. 30, 35-36 (1986); *Evans* v. *Gunnip*, 36 Del. Ch. 589 (1957). The value of good will, however, is often difficult to fix with precision. See *Moore* v. *Rawson*, 185 Mass. 264, 272-273 (1904). It is derived from a number of sources, including an identifiable trade name and location, a favorable reputation among customers, and good relations with sources of financing, suppliers, or others whose favor may have a positive impact on the business. See *Martin* v. *Jablonski*, 253 Mass. 451, 456-457 (1925). Various other methods for the identification and evaluation of its components have been used or suggested.

See, e.g., *Moore* v. *Rawson, supra* at 273; *Hutchins* v. *Page*, 204 Mass. 285, 286-287 (1910); *Murray* v. *Bateman*, 315 Mass. 113, 115 (1943); *Fisher* v. *Fisher*, 352 Mass. 592, 595-596 (1967); *Delano Growers' Coop. Winery* v. *Supreme Wine Co.*, 393 Mass. 666, 682-683 (1985); *Stefanski* v. *Gonnella*, 15 Mass. App. Ct. 500, 503 (1983). See also *Winn-Dixie Montgomery, Inc.*, v. *United States*, 444 F.2d 677, 681 (5th Cir. 1971); *Northern Natural Gas Co.* v. *United States*, 470 F.2d 1107, 1108-1109 (8th Cir. 1973); *Miami Valley Bdcst. Corp.* v. *United States*, 499 F.2d 677, 681-682 (Ct. Cl. 1974); *North Clackamas Community Hosp.* v. *Harris*, 664 F.2d 701, 707 (9th Cir. 1980); *Infusaid Corp.* v. *Intermedics Infusaid, Inc.*, 756 F.2d 1, 3 (1st Cir. 1985); Note: An Inquiry into the Nature of Goodwill, 53 Columbia L. Rev. 660 (1953).

The specific formula that Murray now urges should have been applied by the jury was not requested by him at trial. Rather, in the instructions to the jury good will was more generally described, without material objection,[2] as a premium attaching to a business from the increased patronage caused by its favorable reputation in the community. Absent a more focused objection or request, the judge was not required to instruct in any greater detail. There was evidence from which the jury could infer that the partnership had acquired (or was substantially along in the process of acquiring) other assets of value which do not fit comfortably within this description of good will. For example, prior to dissolution, the partnership had obtained necessary permits and licenses from Chelmsford, had executed a franchise agreement with Burger King, and had made arrangements to enter into what may have been a favorable lease for the completed restaurant premises. On the evidence presented, we cannot say the jury award was irrational.

---

[2] The thrust of Murray's objection at this point was directed at the judge's refusal to instruct the jury that, "[i]f the restaurant was not yet operational when the partnership was dissolved, as a matter of law it could not yet have acquired any good will." The trial judge was correct. A business enterprise may begin to acquire good will from many sources (e.g., the establishment of favorable relations with financiers, suppliers, employees, and so forth, see *Donahue* v. *Draper, supra* at 35) prior to the date on which its serves its first customer.

3. *Evidentiary issues.*

(a) Although the question is close, the judge did not err in permitting Lionel Marchand (the plaintiff's father) to testify as to the substance of a March, 1982, conversation between himself, Gary Marchand, and Murray. While it is settled that offers of settlement are inadmissible to establish liability, see *Enga* v. *Sparks*, 315 Mass. 120, 124 (1943), whether a particular discussion is in fact a settlement offer may require the resolution of conflicting testimony and is a preliminary question for the trial judge. It was clear from the testimony that, on at least one occasion prior to March, 1982, Murray had made a settlement offer of $45,000. Early in the trial, the judge was apparently not satisfied by the testimony of Murray and Gary Marchand that the March conversation was anything but a recital of this earlier offer, and thus excluded their testimony relative to it. However, the judge could properly reassess these rulings in light of the subsequent voir dire testimony of Lionel Marchand. As the ruling indicates, the judge believed Lionel Marchand's account of the conversation (that Murray offered to purchase Gary Marchand's share of the partnership for $45,000) and disbelieved Murray's (that the offer was an offer of settlement). The possibility that Lionel Marchand modified his description of the conversation to satisfy the judge's previously expressed reservations was raised and rejected by the trial judge.

(b) Murray argues that it was an abuse of discretion for the judge to qualify Richard Siegel to serve as an expert witness for the plaintiff. Siegel's uncontradicted testimony indicated that he received a doctoral degree in economics and business administration in 1961; since then he has taught economics and worked as an economist in both the public and private sector; and, having worked since 1968 as an economics consultant in the Boston area, he has been called upon a number of times to perform studies involving the valuation of businesses, including restaurants. On that evidence, the judge cannot be said to have abused his broad discretion. See *Delano Growers' Coop. Winery* v. *Supreme Wine Co.*, 393 Mass. at 681-682; *Keating* v. *Duxbury Housing Authy.*, 11 Mass. App. Ct. 934 (1981).

Criticisms raised by Murray with respect to Siegel's research methodology, his preparation, and the hearsay sources for some of the information he used go to the weight that might be accorded his testimony, not to its admissibility. *General Elec. Co.* v. *Assessors of Lynn*, 393 Mass. 591, 601-602 (1984). Questions raised during cross-examination as to whether Siegel had prior occasion to evaluate a fast food franchise, as opposed to other types of restaurants or businesses in general, do not preclude him from testifying. See *Power Serv. Supply, Inc.* v. *E.W. Wiggins Airways, Inc.*, 9 Mass. App. Ct. 122, 130 (1980). We are particularly reluctant to overrule the trial judge's determination where there is some evidence that the specific methodology employed by Siegel is used generally in the industry to value franchises, and where the defendant himself used this methodology to set a value of his share of the business in the draft partnership agreement that he expected Marchand to sign. This particular methodology, although perhaps not highly regarded, has been permitted as the basis for expert testimony of value in related contexts. See *Fisher* v. *Fisher*, 352 Mass. at 595-596; *Stefanski* v. *Gonnella*, 15 Mass. App. Ct. at 503-504. This is not a case like *Young Men's Christian Assn.* v. *Sandwich Water Dist.*, 16 Mass. App. Ct. 666, 670-673 (1983), where the expert misapplied an otherwise valid method or mischaracterized the method that he did apply.

4. *Interest*. The jury found that the dissolution of the partnership was caused by Marchand's breach of the agreement. That, taken with the other circumstances of the relationship between Marchand and Murray and the uncertain status of the partnership in the first place, supports the trial judge's determination that the equities in this case were not so compelling as to justify treating it as an exception to the usual rule that interest is not chargeable among partners in the absence of an agreement to that effect. See *Shulkin* v. *Shulkin*, 301 Mass. 184, 187 (1938); *Kennedy* v. *Kennedy*, 13 Mass. App. Ct. 1036, 1037-1038 (1982). There was no error in the order amending the judgment.

*Order amending judgment affirmed.*

*Judgment affirmed.*