HEIDI HURWITZ *vs.* NEAL BOCIAN & another[1]
(and a companion case[2]).

No. 94-P-1890.

Middlesex. January 10, 1996. - September 26, 1996.

Present: PERRETTA, IRELAND, & GREENBERG, JJ.

*Frauds, Statute of. Contract,* Sale of securities, Misrepresentation. *Securities,* Sale. *Fraud. Estoppel. Evidence,* Fraud, Offer of compromise.

Where, in a civil action, the plaintiff's motion to amend the complaint to add a count for deceit was denied and the plaintiff then brought an independent action asserting the same claim, there was no error in a Superior Court judge's denial of the defendant's motion to dismiss the second action and allowing the second complaint to stand for trial consolidated with the earlier action: the defendant demonstrated no prejudice thereby. [368-369]

In a civil action asserting a claim for specific performance of a contract to convey securities, in which the jury found that the Statute of Frauds barred enforcement of the defendant's oral promise to the plaintiff, the defendant was nonetheless estopped to assert the Statute of Frauds on the plaintiff's other claim for deceit, where the jury found that the defendant had intentionally made misrepresentations of fact that induced action on the part of the plaintiff that led to her sustaining losses. [369-371]

At the trial of a civil action, the trial judge implicitly ruled that the substance of a tape-recorded message left by the defendant on the plaintiff's telephone answering machine and a transcript of the message did not constitute an inadmissible offer to compromise the dispute and the evidence was properly admitted for consideration by the jury. [371-373]

At the trial of a claim for deceit, the evidence was sufficient to establish that the defendant had made a promise to the plaintiff [373], sufficient to establish detriment to the plaintiff from her reliance on the defendant's misrepresentation [373-374], and sufficient to support the amount of damages awarded to the plaintiff by the jury [374].

CIVIL ACTIONS commenced in the Superior Court Department on October 2, 1991, and April 14, 1993, repectively.

[1]Prime Communications, Inc.
[2]The consolidated case is between the same parties.

A motion to amend the complaint was heard by *Judith A. Cowin, J.*; motions to dismiss and to consolidate the cases for trial were heard by *Elizabeth Butler, J.*; and the cases were tried before *Wendie I. Gershengorn, J.*

*Albert P. Zabin* for the plaintiff.

*James C. Donnelly, Jr.,* for the defendants.

PERRETTA, J. Soon after commencing her employment with Prime Communications, Inc. (Prime), Heidi Hurwitz became romantically involved with Neal Bocian who ultimately became the sole shareholder in Prime. In 1987, Prime fell upon a two-year period of financial difficulty. Throughout that period, Bocian repeatedly assured Hurwitz, who had proved herself to be an excellent executive and salesperson, that if she were patient and saw the company through its difficulties, she would be an equal partner in the business. When their personal relationship came to an end in 1990, Hurwitz decided that her business association with Bocian should also end. She sought to hold Bocian to his partnership promises, but he refused to recognize that she had any interest in Prime. Hurwitz then sought specific performance of Bocian's promises and damages for deceit. On appeal from the judgment awarding her $600,000 in damages, Bocian's principal claim is that Hurwitz's action was barred by G. L. c. 106, § 8-319, the Statute of Frauds pertaining to contracts for the sale of securities. Concluding that Bocian cannot rely upon the statute to defeat Hurwitz's action in tort, which was supported by sufficient evidence, we affirm the judgment.

1. *The evidence.* There was evidence to show that in 1980, Bocian hired Hurwitz to work in the corporation that was to become Prime. At that time, Bocian owned half the stock in the company, and the other half belonged to two men whom Bocian referred to as his "partners." Bocian purchased the stock of each of these men in 1983 and 1987. During that period, Bocian never referred to anyone other than a shareholder as his partner.

From the outset, Hurwitz and Bocian worked closely and put in long hours. In 1982, they became romantically involved. Bocian confided in Hurwitz about his marital problems and told her that he and his wife were separating. The personal relationship between Hurwitz and Bocian was not always tranquil. They argued frequently, and Hurwitz

broke off the relationship several times before the final break in 1990. Notwithstanding her stormy personal relationship with Bocian, Hurwitz's business career was going quite well. In 1983, Bocian promoted Hurwitz to the position of vice-president, and she participated in most of the major business decisions made by Bocian. She was a major contributor to the company's success.

Hard times fell upon the company in 1987. Payroll checks were being dishonored, payroll taxes went unpaid, and the company's debt was at the half-million mark. During this time, Bocian told Hurwitz, according to her testimony, that if she "just stayed with the company and . . . helped him — helped see him through the financial problems of the company, that when we were past it, he would make me an equal partner." Hurwitz decided to stay with Prime, and she took over the day-to-day operation of the company while Bocian devoted his energies to generating new business. At one point during this financial crisis, Hurwitz was prepared to loan the company $100,000. She decided against the loan when she was advised that, because she had signed payroll checks, there was a risk that she might be held liable by the Internal Revenue Service for the unpaid payroll taxes. She did, however, frequently refrain from taking any salary, and like Bocian, she was not included on the company's disability insurance plan.

Through hard work, Bocian and Hurwitz brought Prime through its difficulties and turned it into a successful advertising agency. Once the company was again financially sound, Bocian appeared to live up to his promise to Hurwitz. He introduced her to his friends and business associates as his "equal partner," he testified at trial that she was his partner, and their compensation, draws, and perquisites (matching Jaguar automobiles, among others) were equal.

During this period of prosperity, Hurwitz and Bocian had many discussions about putting their agreement in writing. Hurwitz was not concerned that Bocian would fail to honor the oral agreement. Rather, she worried that if anything happened to Bocian, the company would pass to his family unless she had a written agreement to prove that she was his equal partner. Bocian explained that although he was willing to reduce their agreement to writing, he wanted to wait until his divorce was final so as not to create any problems with his

wife. The truth of the matter was that although Bocian and his wife had been living apart since 1985, neither he nor she ever began proceedings for a divorce or legal separation.

It is unnecessary to set out the details of the dissolution of the personal relationship between Bocian and Hurwitz. It is enough to state that in early 1990, Hurwitz concluded that they could no longer work together, and she left Prime permanently. Discussions between Hurwitz's attorney (her father) and Bocian about the purchase of her interest in Prime were fruitless. Bocian offered to pay $300,000 on the condition that Hurwitz sign a covenant not to compete. Hurwitz's attorney said that if a covenant not to compete were involved, she would be entitled to more than $300,000. Bocian never countered, and these proceedings were commenced.

On this evidence, the trial judge denied Bocian's motions for a directed verdict and put the case to the jury with special questions. See Mass.R.Civ.P. 49(a), 365 Mass. 813 (1974). In response to the first question, "[d]oes the plaintiff . . . have an enforceable contract to require . . . Bocian to convey stock in Prime . . . to her," the jury answered "No." That answer required them to proceed to the following inquiry: "Did the defendant, Neal Bocian, promise the plaintiff an ownership interest (to make her a shareholder) in Prime . . . with no intent to do so for the purpose of inducing the plaintiff to act or refrain from acting in some way and, in reliance in whole or in part on such a promise, did the plaintiff reasonably act or refrain from doing something that she had a right to do?" Here the jury answered "Yes" and next found that the value of Hurwitz's ownership interest was $600,000, or one-half the value of Prime as testified to by Hurwitz's expert witness.

2. *Motion to dismiss.* When Hurwitz's motion to amend her original complaint by adding a count in deceit was denied, she brought an independent action which Bocian moved to dismiss on the ground of the pendency of the original complaint. See Mass.R.Civ.P. 12(b)(9), 365 Mass. 755 (1974). A Superior Court judge, other than the judge who had denied the motion to amend, denied the motion to dismiss and consolidated the two actions for trial.

Amendment of the complaint was denied on the basis that it was sought approximately five months after discovery was due to be completed under the tracking order of the case and

that Bocian should not be required to defend against a new claim at that stage. The only prejudice alleged by Bocian on appeal is that but for the denial of his motion to dismiss, the "claim for misrepresentation would not have been presented to the jury." That another judge had denied the motion to amend did not require the second judge to allow the motion to dismiss. See *Peterson* v. *Hopson,* 306 Mass. 597, 601-602 (1940). See also *McDonough* v. *Marr Scaffolding Co.,* 412 Mass. 636, 644 (1992). We see no error in allowing the second complaint to stand for trial consolidated with the earlier action. See *Sullivan* v. *Iantosca,* 409 Mass. 796, 800-801 (1991).

3. *The Statute of Frauds.* Bocian has asserted from the outset that Hurwitz's claim for deceit is barred by G. L. c. 106, § 8-319, as amended by St. 1983, c. 522, § 5. That statute provides:

"A contract for the sale of securities is not enforceable by way of action or defense unless:

"(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;

"(b) delivery of a certificated security or transfer instruction has been accepted, or transfer of an uncertificated security has been registered and the transferee has failed to send written objection to the issuer within ten days after receipt of the initial transaction statement confirming the registration, or payment has been made, but the contract is enforceable under this provision only to the extent of the delivery, registration, or payment;

"(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

"(d) the party against whom enforcement is sought

admits in his pleading, testimony, or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price."

On appeal, Bocian argues that Hurwitz's claim for damages for misrepresentation is barred by § 8-319 because it seeks to enforce the "identical promise which the jury found unenforceable."[3] There is authority from other jurisdictions for the general proposition that a Statute of Frauds may bar an action in tort where an essential element of that action is an oral contract within the comprehension of the statute. Jurisdictions which adhere to that rule do so on the premise that to recover on the mere allegation that an oral promise was made without the intention to perform it would defeat the very purpose of the Statute of Frauds. See *Dung* v. *Parker*, 52 N.Y. 494, 498-499 (1873). See also *Mildfelt* v. *Lair*, 561 P.2d 805, 813-815 (Kan. 1977), and cases therein collected.

It is also the law of this Commonwealth that a mere refusal to perform an oral promise within the Statute of Frauds, standing by itself, is not an actionable fraud. See *Ranicar* v. *Goodwin*, 326 Mass. 710, 713 (1951). However, Massachusetts has long held that where misrepresentations of fact, including intention, constitute a wrong other than mere breach of a promise and start a chain of events which leads to loss, the promisor may be estopped from raising the Statute of Frauds as a defense. See *Levin* v. *Rose*, 302 Mass. 378, 381-382 (1939); *Schleifer* v. *Worcester No. Sav. Inst.*, 306 Mass. 226, 229-230 (1940); *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 728 (1974), *S.C.*, 368 Mass. 811 (1975); *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 154-159, *S.C.*, 376 Mass. 757 (1978); *Hickey* v. *Green*, 14 Mass. App. Ct. 671, 673-674 (1982); *Greenstein* v. *Flatley*, 19 Mass. App. Ct. 351, 356-357 (1985). See also Restatement (Second) of Contracts § 90 (1981) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can

[3]Based upon the evidence, the trial judge's jury instructions and the formulation of the special question, it appears that the jury's finding, that there was no enforceable contract for the conveyance of stock in Prime to Hurwitz, rests upon that part of § 8-319(*a*) which speaks to a "stated quantity of described securities at a defined or stated price."

be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires").

Bocian asserts that estoppel has been legislatively determined to be inapplicable to § 8-319 and that to allow Hurwitz damages for misrepresentation would be to circumvent that determination. This assertion is based upon authority from other jurisdictions which have relied upon § 2-201 of the Uniform Commercial Code in refusing to apply estoppel to the Statute of Frauds in respect to the sale of goods. The reasoning of those cases is that § 2-201(3) sets out specific alternative methods of satisfying the Statute of Frauds and that to apply estoppel is to create judicially an alternative not legislatively recognized. See, e.g., *C.R. Fedrick, Inc.* v. *Borg-Warner Corp.*, 552 F.2d 852, 856-858 (9th Cir. 1977). See generally Edwards, The Statute of Frauds of the Uniform Commercial Code and the Doctrine of Estoppel, 62 Marq. L. Rev. 205 (1978).

We think, however, that Bocian's argument is foreclosed by G. L. c. 106, § 1-103, as inserted by St. 1957, c. 765, § 1, which provides that, "Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." See *National Shawmut Bank* v. *Vera*, 352 Mass. 11, 16 (1967) ("there is basis in § 1-103 for regarding the code as supplemented by existing law '[u]nless displaced by the particular provisions of' the code itself"). See also *Terry* v. *Kemper, Ins. Co.*, 390 Mass. 450, 454 (1983). Section 2-201 has been held not to preclude recovery that is "warranted on the basis of promissory estoppel." *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 6 Mass. App. Ct. at 159. The differences between § 2-201 and § 8-319 are not sufficiently significant to justify a conclusion that estoppel is applicable to one but not the other. We, therefore, conclude that Hurwitz's action in tort for deceit is not barred by § 8-319.[4]

4. *The tape-recorded message.* About a month before Hur-

---

[4]Bocian also makes fleeting argument that even if estoppel were applicable, the "issues of 'definite and substantial detriment,' and whether the injustice could be corrected by some other remedy, were neither tried nor submitted to the jury." In her comprehensive memorandum of decision on

witz's departure from Prime, Bocian left a telephone message on Hurwitz's answering machine. The jury ·was allowed to hear one of the calls and was provided with a transcript of Bocian's message in which he stated, in part:

> "And you're right, maybe we just can't work together. You want another number? Come up with another number, we'll work something out. . . . You want to sue me? You want to work? I just don't care. . . . So I owe you seven million dollars? . . . It is enough. I've paid my dues. . . . If I've got to pay you, I'll pay you off. . . . I don't owe you a living. You don't owe me a living. So you make your decision on what you want to do, but me, I had enough. . . . Do you want to get out? Come up with a number. . . . But I will agree to you, with you on, if you want to get out, come up with a number. If I agree to it, I'll pay it. . . . You don't think three hundred is fair, then come up with any number. I don't care. You mean all of a sudden the company is worth money. You're there oh, I want my share. Then get your share. If that's what you want, then I'll get, I'll pay it. I'll pay you what you want and you know what, if it sounds good enough, I'll let you buy me out. You can have the reciprocal."

It is Bocian's claim on appeal that the message was an inadmissible offer to compromise a dispute. See *Enga* v. *Sparks*, 315 Mass. 120, 124 (1943).

Although the trial judge made no express finding that the taped message did not constitute a settlement negotiation, its admission in evidence "imports the necessary findings."

---

Bocian's motion for judgment notwithstanding the verdict, the trial judge rejected this argument for reasons which Bocian does not challenge on appeal. As reasoned by the trial judge, the "doctrine of misrepresentation similarly requires that actual damage result directly from the misrepresentation. This requirement ensures that a plaintiff's reliance is of a definite and substantial character and guards against frivolous complaints." The trial judge also concluded that where the jury found, as demonstrated by their answer to the special question, that "Bocian had deliberately and intentionally misled Hurwitz to believe that she was a partner in order to induce her to remain with the company . . . enforcement of the promise is justified. See *Chamberlayne School* v. *Banker*, 30 Mass. App. Ct. 346 (1991)." We agree with the reasoning of the trial judge and adopt it as our own.

*Greenberg* v. *Weisman*, 345 Mass. 700, 703 (1963). There was nothing to show that prior to Bocian's message, Hurwitz had made any suggestion to Bocian that she intended to sue him or that Bocian offered Hurwitz $300,000 to settle any claim. Indeed, Hurwitz testified that she went back to work after this message, that she still wanted to be at Prime, and that she did not leave permanently until after a subsequent and particularly bitter argument between them. On this evidence, we are not prepared to say that the trial judge was in error in admitting the taped message. See *Marchand* v. *Murray*, 27 Mass. App. Ct. 611, 615 (1989).[5]

5. *Sufficiency of the evidence.* Taking the evidence in an aspect most favorable to himself, Bocian claims that the evidence of the "unconfirmed oral promise that [Hurwitz] would some day have an opportunity to become a 'partner' . . . was not a promise on which a prudent person could reasonably rely." But see *McNamara* v. *Honeyman*, 406 Mass. 43, 45-46 (1989); *Foster* v. *The Loft, Inc.*, 26 Mass. App. Ct. 289, 292 (1988), and cases therein cited. Reliance on *Rhode Island Hosp. Trust Natl. Bank* v. *Varadian*, 419 Mass. 841 (1995), is misplaced as that case, which does not involve a claim for deceit, is inapposite. There the court concluded that the evidence "did not warrant a finding that a 'promise' in the contractual sense had been made, and therefore no amount of reliance on the part of the promisees would give rise to a 'contract' by virtue of reliance." *Id.* at 850. In the instant case, the evidence was sufficient to show that a promise in fact had been made, albeit not in a form sufficient to satisfy § 8-319.

Bocian also argues that Hurwitz failed to present sufficient evidence of "substantial detriment" to her from her reliance on any representation by Bocian. However, a showing of detriment to the degree urged by Bocian is not required to prove fraud. See Restatement (Second) of Torts §§ 525 and 537 (1977). Additionally, as noted by the trial judge in another but applicable context (see note 3, *supra*), Hurwitz did present evidence of the actual damages she sustained as a result of her reliance. Compare *Nei* v. *Burley*, 388 Mass. 307, 311

---

[5]There is an additional claim of error in the trial judge's evidentiary rulings, viz., that the scope of cross-examination of Hurwitz was improperly restricted. We need say only that the trial judge did not abuse her discretion.

(1983), holding that directing verdicts on count for fraud was correct where the evidence demonstrated that the plaintiffs did not rely upon any representations made by the defendants.

Finally, the argument concerning the sufficiency of the evidence of damages goes to the weight of the testimony given by Hurwitz's expert testimony, a matter peculiarly for the jury to decide in light of the lack of an objection or motion to strike from Bocian.

*Judgment affirmed.*