NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-978                                      Appeals Court

          JOAN FILBEY  vs.  FREDERICK S. CARR, JR.

                    No. 19-P-978.

     Middlesex.    May 11, 2020. - September 17, 2020.

          Present:  Massing, Shin, & Ditkoff, JJ.


Evidence, Offer of compromise, Opinion.  Loan.  Contract, Loan,
     Performance and breach, Implied covenant of good faith and
     fair dealing.  Negotiable Instruments, Note.  Practice,
     Civil, Judgment notwithstanding verdict.



     Civil action commenced in the Superior Court Department on
July 27, 2016.

     The case was tried before Bruce R. Henry, J., and a motion
for judgment notwithstanding the verdict or a new trial was
considered by him.


     Elizabeth E. Olien for the defendant.
     Keith P. Carroll for the plaintiff.


     DITKOFF, J.  The defendant, Frederick S. Carr, Jr., appeals

from a judgment for the plaintiff, Joan Filbey, following a jury

trial.  The primary issue on appeal is whether the trial judge

erred in excluding certain communications as inadmissible

compromise offers. We conclude that there was no error because communications may constitute inadmissible compromise offers any time after an actual dispute or difference of opinion arises regarding a party's liability for or the amount of a claim, regardless whether one of the parties has explicitly threatened litigation. Further concluding that there was sufficient evidence to support the jury's verdict, we affirm.

1. Background. This case concerns a loan that the plaintiff made to the defendant, while the two were dating, to repair the defendant's house. The plaintiff testified that the defendant's "house was in severe deterioration." When the plaintiff learned that the defendant could not afford to repair his house, she offered to loan him some money to do so. According to the plaintiff, the parties "discussed that, probably, repairs and renovations on the house would take one to two years, possibly three years, and the end point . . . of this loan for repairs and renovation[s] was to maximize the selling price of the house." Once the house was sold, the defendant would repay the loan and the two would buy a new house together. Those conversations took place in August 2013, and the plaintiff started loaning money to the defendant in September 2013. Work commenced on the defendant's house in late 2013 and continued into early 2015. During that time, the plaintiff loaned the defendant $332,000.

In 2015, however, "it became very evident that the work had slowed down almost to a halt."  The plaintiff began to have "grave doubts" about the state of her relationship with the defendant.  In September, over Labor Day weekend, those doubts culminated in an "epiphany" that the defendant was not following through with the parties' plan and that the two would not be buying a new house together.  Shortly thereafter, the parties stopped communicating verbally and began communicating via e-mail regarding the loan.  They decided to put the terms of the loan in a promissory note, and, on November 20, 2015, the defendant sent the plaintiff a draft promissory note that included a maturity date of December 31, 2027.[1]  The plaintiff was "horrified" upon seeing the year 2027, as she thought the parties had agreed to a short-term repayment plan, and she believed it had to be a typographical error.  On November 21, 2015, she responded that she was "correcting the typo[graphical] error."  On November 23, 2015, the defendant responded, stating that "[t]he date I used was not a typo[graphical error]."

---

[1] The defendant's draft promissory note also included a release, which stated, "For good and valuable consideration . . . [the plaintiff] covenants and agrees that the amount of the [p]romissory [n]ote represents the sum of all obligations of [the defendant] to [the plaintiff] and waives, discharges and forever releases [the defendant] from any other liability or obligation."

When it became apparent that the parties would be unable to resolve their dispute as to when the defendant would pay back the plaintiff, the plaintiff filed a complaint against the defendant alleging claims of breach of contract and breach of the implied covenant of good faith and fair dealing, which were ultimately tried to a jury.[2]  The jury were asked to resolve whether, at the time the loan was made, the parties reached an agreement as to the loan's maturity date.[3]  The jury concluded that the parties had reached such an agreement, and the jury further concluded that the parties agreed on a maturity date of September 30, 2016.  Accordingly, the judgment awarded the plaintiff $332,000, with prejudgment interest calculated from September 30, 2016.

2.  <u>Compromise offers</u>.  The primary issue on appeal is whether the trial judge erred in excluding certain communications, made once the parties decided to put the terms of the loan in a promissory note, as compromise offers.  The first excluded communication was a draft promissory note that the plaintiff sent to the defendant on November 4, 2015.  The

---

[2] The plaintiff's complaint asserted other claims that are not at issue here.

[3] If the jury determined that the parties had not reached an agreement as to the maturity date, the jury were asked to determine when the loan reasonably should be repaid under the circumstances of the transaction.

plaintiff's draft promissory note included a maturity date of "30 days following the . . . sale" of the defendant's house "or no later than December 31, 2017, whichever is first."  This excluded communication predated the communications discussed above (the defendant's draft promissory note and the parties' resulting e-mails regarding whether the defendant's offer to repay the loan by the end of 2027 was a typographical error), all of which were admitted in evidence.[4]  The other excluded communications, however, occurred after the e-mails regarding whether the year 2027 was a typographical error.  They began with an offer, sent by the plaintiff on November 25, 2015, to extend the loan's maturity date to December 2018, and included additional offers by the plaintiff to extend the loan's maturity date by increasing amounts, ultimately to December 31, 2024.

As is well established, evidence of a compromise offer is inadmissible to prove or disprove the validity or amount of a disputed claim.  See Morea v. Cosco, Inc., 422 Mass. 601, 603-604 (1996); Marchand v. Murray, 27 Mass. App. Ct. 611, 615 (1989).  Although the defendant argues that this prohibition applies to communications made only after a party threatens

-----

[4] No party requested, even in the alternative, the exclusion of the communications that were admitted in evidence.  Accordingly, we have no occasion to opine whether they too were subject to exclusion upon request.

litigation, we do not agree.[5]  Rather, the prohibition applies to communications made after an actual dispute arises.  In reaching this conclusion, we look to Massachusetts case law.  See Commonwealth v. Wood, 90 Mass. App. Ct. 271, 277 (2016).  Moreover, because the Federal Rules of Evidence contain an analogous rule, we also find "Federal precedent a useful touchstone."  Id. at 278.

The Massachusetts case on which the defendant mainly relies is Hurwitz v. Bocian, 41 Mass. App. Ct. 365 (1996).  Hurwitz worked for a company that Bocian owned, and during the course of Hurwitz's employment, the two became romantically involved.  Id. at 366.  When the company began to have financial difficulties, Bocian promised Hurwitz that, "if she were patient and saw the company through its difficulties, she would be an equal partner in the business."  Id.  Hurwitz did see the company through its difficulties, and Hurwitz and Bocian then began to discuss

---

[5] The defendant acknowledges that at least two communications were sent after the plaintiff threatened litigation, but he argues that those communications were not compromise offers because they included or were phrased as "ultimatums."  The defendant provides no authority in support of this proposition, and we have found none.  "[O]ffers of settlement are inadmissible to prove or disprove a defendant's liability."  Dahms v. Cognex Corp., 455 Mass. 190, 198-199 (2009).  There is no requirement that the offeror be open to a counteroffer, nor would such a requirement advance the policy objective of "limiting the collateral consequences of a decision to compromise."  Global Investors Agent Corp. v. National Fire Ins. Co. of Hartford, 76 Mass. App. Ct. 812, 821 (2010).  We reject such a requirement.

putting their agreement in writing.  Id. at 367.  Shortly thereafter, Hurwitz decided to leave Bocian and the company, at which point a dispute arose as to how much Bocian would pay Hurwitz for her interest in the company.  Id. at 368.  A month before Hurwitz made the decision to leave, Bocian left a telephone message on Hurwitz's answering machine.  Id. at 371-372.  In that message, Bocian offered to pay Hurwitz $300,000.  Id. at 372.  The telephone message was properly admitted in evidence because "[t]here was nothing to show that prior to Bocian's message, Hurwitz had made any suggestion to Bocian that she intended to sue him or that Bocian offered Hurwitz $300,000 to settle any claim."  Id. at 373.

The defendant focusses on the fact that Hurwitz had not yet threatened to sue Bocian at the time of the telephone message.  Hurwitz, 41 Mass. App. Ct. at 373.  That fact, however, was not critical to our analysis.  As we explained, Hurwitz was still contentedly working for the company at the time of the telephone message.  Id.  Because the dispute, and thus Hurwitz's claim, did not arise until after Hurwitz left the company, there was nothing to show that "Bocian offered Hurwitz $300,000 to settle any claim."  Id.  Hurwitz thus supports our conclusion that the appropriate threshold is the point in time at which an actual dispute arises.

Section 408(a) of the Massachusetts Guide to Evidence (2020) also supports our conclusion. It provides the following:

> "(a) Prohibited Uses. Evidence of the following is not admissible -- on behalf of any party -- either to prove or disprove the validity or amount of a disputed claim: (1) furnishing, promising, or offering -- or accepting, promising to accept, or offering to accept -- a valuable consideration in compromising or attempting to compromise the claim or any other claim, and (2) conduct or a statement made during compromise negotiations about the claim."

This section requires the existence of a "disputed claim"; it does not, as the defendant suggests, require a party to threaten litigation before the provision regarding prohibited uses applies. Id.[6]

Lastly, several United States Courts of Appeals have held that, under the analogous Federal rule, "a dispute need not 'crystalize to the point of threatened litigation' for the . . . exclusion rule to apply." Weems v. Tyson Foods, Inc., 665 F.3d 958, 965 (8th Cir. 2011), quoting Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 527 (3d Cir. 1995). Rather, the exclusion rule applies "so long as there is 'an actual

---

[6] Nor do we think the note to § 408 helps the defendant's argument. The note states that "[t]here can be no offer to compromise a claim unless there is [an] indication that there is a potential lawsuit." Mass. G. Evid. § 408 note (2020). A potential lawsuit exists where there is an actual dispute or difference of opinion regarding a party's liability for or the amount of a claim. This is quite different than the threat of a lawsuit, which may not occur until after it becomes evident that the parties will be unable to resolve their dispute amicably.

dispute or difference of opinion' regarding a party's liability for or the amount of the claim." Weems, supra, quoting Affiliated Mfrs., Inc., supra. Accord Affiliated Mfrs., Inc., supra at 526 (exclusion rule applies if there is "an actual dispute, or at least an apparent difference of view between the parties concerning the validity or amount of a claim"); Dallis v. Aetna Life Ins. Co., 768 F.2d 1303, 1307 (11th Cir. 1985) (same). This approach is consistent with "[t]he policy behind [the rule of] encourag[ing] freedom of discussion with regard to compromise," Affiliated Mfrs., Inc., supra, whereas requiring a party to threaten litigation in order for the rule to apply would poison settlement discussions from the start.[7]

We thus examine whether the excluded communications here involved compromise offers made after an actual dispute arose, and we will "not disturb [the trial] judge's decision to [exclude those communications] absent an abuse of discretion or other legal error." Zucco v. Kane, 439 Mass. 503, 507 (2003). We turn first to the excluded communications that postdated the

---

[7] In Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., 561 F.2d 1365, 1373 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978), the Tenth Circuit stated that the trial "court did not commit manifest error" in admitting communications where the dispute had not yet "crystallized to the point of threatened litigation." We do not interpret this language as intending to establish the threat of litigation as a threshold requirement and reject the defendant's argument that we should establish such a requirement.

e-mails regarding whether the year 2027 was a typographical error. These excluded communications were all sent on or after November 25, 2015.[8] By that point in time, the parties had sent each other draft promissory notes regarding how the defendant would repay the loan he had already received. The parties' respective drafts included very different maturity dates, evidencing the existence of an actual dispute regarding the defendant's current liability for and the amount of the plaintiff's claim for repayment of that preexisting loan. The defendant's draft even included a provision releasing him "from any other liability or obligation." See note 1, supra. We discern no reason the defendant would have included such a release if no actual dispute had arisen. The trial judge acted within his discretion in excluding these communications.

The remaining excluded communication -- the plaintiff's first draft promissory note, sent on November 4, 2015 --

---

[8] We are not persuaded by the defendant's argument that no actual dispute could have arisen until September 30, 2016, the date that the jury concluded was the loan's maturity date, because the defendant had no legal obligation to pay the loan until then. There is no logical reason the parties could not have had an actual dispute about the maturity date of a loan before that loan came due. In any event, the admissibility of exhibits cannot turn on what a jury later finds and is instead a question for the trial judge. See Marchand, 27 Mass. App. Ct. at 615. Here, where it was the plaintiff's position that the parties had agreed to a repayment plan as short as one year, making the loan due sometime in September 2014, the trial judge acted within his discretion in deciding that an actual dispute had arisen by November 2015.

presents a closer question. Nonetheless, when the plaintiff sent that draft promissory note to the defendant, she knew he was not following through with their original plan to repair his house for sale. The parties' relationship had deteriorated such that they were no longer communicating verbally and such that the plaintiff felt the need to memorialize the terms of the preexisting loan in writing, something she previously had not considered necessary. Contrast Hurwitz, 41 Mass. App. Ct. at 373 (no actual dispute where plaintiff was still working for defendant). On these facts, we cannot say that the trial judge abused his discretion in deciding that an actual dispute regarding the defendant's current liability for and the amount of the plaintiff's claim for repayment of the loan had arisen by the time the plaintiff sent her first draft promissory note to the defendant.

The defendant alternatively argues that the excluded communications were admissible for other purposes. "[E]vidence regarding the settlement may be admissible if it 'is relevant for some other purpose'" than proving or disproving the amount or validity of a claim. Dahms v. Cognex Corp., 455 Mass. 190, 198-199 (2009), quoting Morea, 422 Mass. at 603. The defendant's theory of the case was that there were no loan terms until after the parties separated in 2015 and that only then did they begin to negotiate what those terms should be. He argues

that the excluded communications were thus admissible (1) to prove the plaintiff's state of mind regarding when the parties reached an agreement, and (2) to impeach the plaintiff's testimony that she never would have agreed to a long-term repayment plan, when she ultimately was willing to agree to one that extended into 2024. The defendant, however, never sought to introduce the excluded communications for either of these alternative purposes, and the issue is therefore waived. See Halstrom v. Dube, 481 Mass. 480, 483 n.8 (2019).[9]

3. Sufficiency of the evidence. Separately, the defendant argues that the trial judge erred in denying his motion for a directed verdict and declining to set aside the verdict and grant a new trial because the jury could not have found a precise maturity date from the plaintiff's testimony that the loan was to be repaid in anywhere from one to three years. We disagree. In reaching this conclusion, we are mindful that a jury verdict shall be sustained if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant]." O'Brien v. Pearson, 449 Mass.

---

[9] Because we conclude that there was no error in the trial judge's exclusion of these communications, we need not address the defendant's argument that their exclusion requires a new trial.

377, 383 (2007), quoting <u>Turnpike Motors, Inc</u>. v. <u>Newbury Group,
Inc</u>., 413 Mass. 119, 121 (1992).

The plaintiff testified that she started loaning money to
the defendant in September 2013 and that the intent was for the
loan to be repaid after the defendant repaired and sold his
house.  As she explained, the loan's short-term repayment plan
was the reason she did not charge interest or have the defendant
sign loan documents.  The plaintiff testified, repeatedly, that
she thought this process would take one to two, maybe three,
years, and she also testified regarding the extent of the
repairs that needed to be completed, which included gutting
rooms and replacing the electrical and plumbing systems.  Based
on a combination of this evidence, the jury had a sufficient
basis to find that the defendant agreed to complete the repairs,
sell his house, and repay the loan by September 30, 2016.[10]

4.  <u>Conclusion</u>.  The judgment is affirmed, as is the order
denying the motion for judgment notwithstanding the verdict or
for a new trial.

So ordered.

---

[10] The plaintiff makes a request for appellate attorney's
fees, which is denied.  "Although the . . . appeal is
unsuccessful, it is not frivolous."  <u>Gianareles</u> v. <u>Zegarowski</u>,
467 Mass. 1012, 1015 n.4 (2014).