# United States Court of Appeals

## For the First Circuit

No. 02-9001

IN RE AARON H. WATMAN, Debtor.

LAWRENCE GROMAN,

Plaintiff/Creditor, Appellant,

v.

AARON H. WATMAN,

Defendant/Debtor, Appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Torruella and Lipez, Circuit Judges,

and Schwarzer,* District Judge.

Joseph S. U. Bodoff, with whom Richard P. O'Neil and Bodoff & Associates, were on brief, for appellant.

Peter J. Haley, with whom Leslie F. Su and Gordon Haley LLP, were on brief, for appellee.

August 20, 2002

* Of the Northern District of California, sitting by designation.

**LIPEZ**, **Circuit Judge**.  This case raises questions about the proper application of 11 U.S.C. § 727, which prohibits discharge in bankruptcy cases involving a fraudulent transfer of assets.  Debtor-appellee Aaron H. Watman filed a Chapter 7 bankruptcy petition on March 22, 1999.  Creditor-appellant Lawrence Groman initiated an adversary proceeding objecting to Watman's discharge under 11 U.S.C. §§ 727(a)(2) and (a)(7).  After a trial, the bankruptcy court entered judgment in favor of Watman, and the Bankruptcy Appellate Panel (BAP) affirmed that judgment.  Groman now appeals.  We vacate and remand for further proceedings consistent with this opinion.

**I.**

Except where otherwise specified, the following facts do not appear to be in dispute.  Watman, a dentist, joined Childrens Dental Associates of Lowell (Childrens Dental) in April 1988.  At that time, Groman, also a dentist, was the sole shareholder, officer, and director of Childrens Dental.  The parties agreed that Watman would be given the opportunity to purchase fifty percent of the practice at the end of one year if the two men worked well together.  Consistent with that plan, at the end of his first year with Childrens Dental, Watman entered into an agreement to pay Groman on a monthly basis for ten years in exchange for a fifty percent ownership stake in the practice.  In 1992, Watman agreed to purchase the other fifty percent of the practice from Groman, and the payment period was extended an additional ten years to cover the other half of the purchase price.  Watman made the monthly

-2-

payments to Groman until September of 1997, at which time Watman claimed to be having difficulties in making the payments. In response, Groman agreed to reduce the monthly payments from $5,600 to $3,000.

Groman testified at trial that Watman made only two of the reduced monthly payments. In April, 1998, Groman filed suit against Watman and Childrens Dental as joint obligors for the remaining balance owed him. On December 14, 1998, Groman obtained a judgment against Watman and Childrens Dental in the amount of $437,918 in Middlesex Superior Court. Neither Watman nor Childrens Dental appealed that judgment.

In or about March of 1999, Groman filed a complaint to appoint a receiver for Childrens Dental. A hearing on the appointment of a receiver was scheduled for March 17, 1999 but was continued by agreement of counsel to March 24, 1999.

On March 18, 1999, Watman wrote thirty-seven checks from the Childrens Dental checking account, totaling $42,011.49. He recorded these transactions in Childrens Dental's books. Of that total, $14,702.02 went to prepayments of Childrens Dental's anticipated expenses for the month of April, including office rent, equipment rent, health insurance, and maintenance. Although payroll was typically paid out every two weeks, Watman caused payroll withdrawals to be made from Childrens Dental's bank account on March 10, 1999 and March 18, 1999 (the day after the original date of the receivership hearing). On March 19, 1999, on the advice of counsel, Watman sent a letter of resignation to Michael

Dana Rosen, counsel for Childrens Dental, terminating his employment immediately. On March 22, 1999, Watman filed his Chapter 7 bankruptcy petition. On March 24, 1999, Childrens Dental filed its Chapter 11 petition.[1] At the time that these petitions were filed, Watman was the sole officer and director of Childrens Dental. At the time of filing, Childrens Dental had cash in bank accounts in the amount of approximately $30,000 and accounts receivable of about $69,000. These assets were disclosed in the bankruptcy schedules and turned over to the bankruptcy trustee. On or about March 25, 1999, Watman informed Lowell Doctors Park,[2] from whom Childrens Dental was renting its office space, that Childrens Dental would be terminating its occupancy of the premises.

From March 24, 1999 through March 31, 1999, Watman operated a dental practice under his own name at the office space that had been occupied by Childrens Dental at 75 Arcand Drive, in Lowell, Massachusetts (75 Arcand Drive location), using the same furniture and equipment that Childrens Dental had used. Watman offered the employees of Childrens Dental positions in his practice on the same terms as Childrens Dental was employing them. Then, on March 31, 1999, Lowell Dentistry for Children, P.C. (Lowell Dentistry) was incorporated and began operations out of the same 75

---

[1] According to Rosen's testimony at trial, Groman intended to object to the confirmation of any Chapter 11 plan, and the bankruptcy judge in any event sua sponte converted the Childrens Dental case to Chapter 7.

[2] Lowell Doctors Park is a limited partnership in which Watman had a 12.5 percent interest.

Arcand Drive location. The corporate documentation to form Lowell Dentistry had been prepared in January 1999 by the law firm of Devine, Millemet & Branch. Childrens Dental paid the cost of these services from a retainer that it had paid to that firm. Watman became, and continues to be, the president, sole shareholder and director of Lowell Dentistry. Most of Childrens Dental's 3000 patients became patients of Lowell Dentistry when Childrens Dental ceased operating.

On August 27, 1999, Groman filed a complaint, alleging, inter alia, that Watman's actions warranted a denial of his discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(7). Watman subsequently moved to dismiss Groman's complaint for failure to state a claim under Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure. That motion was granted by the bankruptcy court. On appeal, the BAP reversed the bankruptcy court's dismissal of the § 727 objections to discharge and remanded for a trial on the merits. After trial, the bankruptcy court entered judgment in favor of Watman. On appeal, the BAP affirmed the judgment of the bankruptcy court. This appeal ensued.

## II.

Unlike most other federal cases, bankruptcy cases are not reviewed on appeal in the first instance by the court of appeals. Rather, under 28 U.S.C. § 158, district courts and federal bankruptcy appellate panels possess authority to hear appeals from bankruptcy court decisions. Section 158 does preserve to the

-5-

parties, however, an additional layer of review in the courts of appeals. Id. Whether the intermediate appellate body is the district court or the BAP, our focus remains on the decision of the bankruptcy court. We examine that court's findings of fact for clear error and afford de novo review to its conclusions of law. See Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 497 (1st Cir. 1997). "Since this is exactly the same regimen that the intermediate appellate tribunal must use, we exhibit no particular deference to the conclusions of that tribunal (be it the district court or the BAP)." Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco), 132 F.3d 104, 107 (1st Cir. 1997); Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994). We accordingly direct our attention to the bankruptcy court's decision.

**III.**

11 U.S.C. § 727(a) enumerates the circumstances which can preclude a Chapter 7 debtor's receipt of a discharge in bankruptcy. In this case, Groman invokes §§ 727(a)(2)(A) and (a)(7) as a bar to Watman's discharge. Section 727(a)(2) provides that:

> The court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition[.]

-6-

11 U.S.C. § 727(a)(2).  Thus, in order for a debtor to be denied a discharge under § 727(a)(2), an objector must show by a preponderance of the evidence that (1) the debtor transferred, removed, destroyed, mutilated, or concealed (2) his or her property (or the property of the estate if the transfer occurs post-petition) (3) within one year of the petition filing date (for prepetition transfers) (4) with intent to hinder, delay or defraud a creditor.  R.I. Depositors Economic Protection Corp. v. Hayes (In re Hayes), 229 B.R. 253, 259 (B.A.P. 1st Cir. 1999).  Grounds for discharge are construed liberally in favor of the debtor.  See Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 137 (1st Cir. 1992).

Section 727(a)(2) applies to this case because of the terms of § 727(a)(7), which prohibits a debtor from committing an act proscribed under § 727(a)(2) in connection with the bankruptcy case "concerning an insider." 11 U.S.C. § 727(a)(7).  Where the debtor is an individual, the term "insider" is defined to include a "corporation of which the debtor is a director, officer, or person in control."  11 U.S.C. § 101(31)(A)(iv).

Under this theory, Groman alleges that Childrens Dental is an insider of Watman, and Watman transferred, removed, destroyed, mutilated, or concealed assets of Childrens Dental in its bankruptcy case, warranting the denial of a discharge in Watman's individual bankruptcy case.  In light of Watman's status as sole officer, shareholder, and director of Childrens Dental, Childrens Dental clearly qualifies as an "insider" of Watman for

purposes of § 727(a)(7), and Watman does not argue otherwise. Rather, this case turns upon what, exactly, Watman transferred out of Childrens Dental, and whether he acted with the intent that disqualifies him from the discharge of his substantial debt to Groman.

**IV.**

In order to prevail under § 727, Groman had to convince the bankruptcy court that Watman acted with the intent to hinder, delay, or defraud his creditors (including Groman) from collecting on their debts. Section 727 requires a showing of actual intent, not constructive intent. See 6 Collier on Bankruptcy ¶ 727.02[3][a] (L. King 15th ed. 2002) (citing cases). The determination of actual intent is a finding of fact. See In re Burgess, 955 F.2d at 137. Often, the intent issue will turn on the credibility and demeanor of the debtor, and in such circumstances, we typically defer to the bankruptcy court's conclusions. Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997). In all events, we will affirm the bankruptcy court's findings of fact unless they appear to be clearly erroneous -- that is, unless we are "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (internal quotation marks omitted). Of course, if we determine "that a bankruptcy court's findings are too indistinct, [we] may decline to proceed further and remand for more explicit findings." In re Healthco, 132 F.3d at 108 n.5.

We are guided in this inquiry by case law from this and other circuits addressing the question of intent. Given the practical difficulty of mounting direct evidence of the debtor's intent, few cases turn on such proof. Instead, looking to the circumstances surrounding the transfer, courts have identified several objective indicia that, taken together, strongly indicate fraudulent intent. Those indicia include: (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the party sought to be charged both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; see Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582-83 (2d Cir. 1983); and (7) an attempt by debtor to keep the transfer a secret; Annino, Draper & Moore, P.C. v. Lang (In re Lang), 256 B.R. 539, 541 (B.A.P. 1st Cir. 2000). Cf. Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254 (1st Cir. 1991) (enumerating similar indicia in the context of fraudulent intent showing under 11 U.S.C. § 548(a)(1)). "The shifting of assets by the debtor to a corporation wholly controlled by him is another badge of fraud." Kaiser, 722 F.2d at 1583.

Watman claims that he formed Lowell Dentistry to preserve the assets of Childrens Dental, relying for that claim on testimony by counsel for Childrens Dental that Lowell Dentistry would turn over profits to Childrens Dental for payment of the debt to Groman. However, that arrangement was never memorialized in writing, is not in any way referenced in any written memoranda, and was not reported in Childrens Dental's bankruptcy schedules. The bankruptcy court does not mention any such arrangement in its decision. We discount this argument and turn to the evidence cited by the bankruptcy court.[3]

In finding no intent to hinder, delay or defraud a creditor, the bankruptcy court focused primarily on the fact that Watman did not conceal his actions, including the checks he wrote from Childrens Dental's checkbook for prepayment of April expenses: "[T]here was no secretion of assets. There was no hiding of assets. Everything was fully disclosed from the beginning . . . ." The court also emphasized that Watman had relied on the advice of counsel: "[W]ith respect to reliance on the advice of counsel, in a close case as this, and particularly where there's no concealment, although reliance on counsel is not a safe harbor, it

---

[3] At trial Watman responded affirmatively to the question "[Wasn't] the formation of Lowell Dentistry for Children . . . part of [an] effort to make sure that Dr. Groman didn't shut down the business?" Groman argues that this affirmative response by Watman is direct evidence of Watman's fraudulent intent. We do not find this testimony to be the direct admission that Groman claims, in part because it can be tied to Watman's claim that he established Lowell Dentistry so that he and Childrens Dental could pay off the debt to Groman.

may, in some circumstances, negate some of the other inferences of intent." The court explained that since "every Chapter 11 filing hinders or delays in many respects the collection efforts of creditors," the fact of "hindering or delay is not a per se basis of denial of discharge."

Groman attacks the bankruptcy court's intent determination on the ground that it focused too narrowly on Watman's reliance on counsel and his lack of concealment and failed to address the other indicia of fraud established by the precedents. Groman argues that fair consideration of these other indicia reveal Watman's fraudulent intent. For example, Watman was the sole officer and director of Childrens Dental and caused Childrens Dental to transfer its assets first to himself and then to Lowell Dentistry, a corporation of which Watman is the president, sole shareholder, and director. See Kaiser, 722 F.2d at 1583 (citing "[t]he shifting of assets by the debtor to a corporation wholly controlled by him" as badge of fraud). Groman further argues that the timing of the alleged transfers, on the eve of a receivership proceeding, reflect Watman's fraudulent intent.

Moreover, Groman emphasizes that neither Watman nor Lowell Dentistry gave any consideration for Childrens Dental's entire dental practice, including its office space, furniture, equipment, supplies and -- more importantly -- its patients and employees. In his view, the transfer of patient records, together with the office space, furniture and equipment, and the hiring of all the employees of Childrens Dental, shifted all the goodwill of

-11-

Childrens Dental to Lowell Dentistry, stripped Childrens Dental of its aggregate value as a going concern, and eliminated its ability to generate income for the estate, leaving Groman with an empty shell at Childrens Dental (save approximately $99,000 in cash and accounts receivables) against which to pursue collection of his $437,918 judgment.[4]

There is considerable force to Groman's claim that there is no logical explanation for Watman's conduct here except an intent to delay, hinder, or defraud his creditors, particularly Groman. We find no evidence of any consideration that passed between Childrens Dental and Lowell Dentistry. Watman was present on all sides of the transaction. The timing of events, in light of the pendency of the receivership proceedings, is suspect. However, there cannot be a meaningful analysis of the fraudulent transfer issue without a determination by the bankruptcy court of exactly what property was transferred between Childrens Dental and Lowell Dentistry.

Therein lies the problem. The bankruptcy court never addressed that transfer question adequately. Instead, its transfer analysis was essentially limited to the following statement:

> There is no -- was no transfer here in the customary sense. Possibly there was some transfer under the broad definition of transfer under Section 101 of the Bankruptcy Code, but I am not willing to and cannot find

___

[4] With a claim of $437,918, Groman was by far the largest creditor of the six unsecured nonpriority creditors of Childrens Dental listed in the bankruptcy schedules, whose claims totaled $439,634.72.

constructive actual intent on top of a
constructive transfer under Section 101. And
even though possession can be a transfer, it
seems to me that the type of transfer, if, in
fact, there was one, is relevant to
determination or an inference of intent. . . .
The transfers, if they did take place at all,
were not of the formal legal title nature, and
to the extent that patients' files, records,
et cetera, are property of the estate, which
at least the defendant claims they're not, and
I heard no evidence to the contrary, the
defendant claiming that they were property of
the individual patients -- to the extent that
those are property of the estate, I find that
they haven't been transferred, and they remain
available to the Trustee for liquidation.

Without minimizing the difficulty of the transfer issue,

we regretfully find the bankruptcy court's analysis unsatisfactory

in a number of ways.[5]  First, we cannot tell whether the bankruptcy

court applied the correct definition of transfer in its analysis.

As we have previously held, the definition of transfer under 11

U.S.C. § 101(54) applies in the context of § 727.  See In re

Bajgar, 104 F.3d at 498.  Under § 101(54), transfer is defined as:

every mode, direct or indirect, absolute or
conditional, voluntary or involuntary, of
disposing of or parting with property or with
an interest in property, including retention
of title as a security interest and
foreclosure of the debtor's equity of
redemption.

11 U.S.C. § 101(54).  According to the legislative history of

§ 101(54),

---

[5] For its part, the BAP left the transfer issue unaddressed and
merely assumed without deciding that "the payments by Childrens
Dental, the diversion of patients, employees, location, etc.,
collectively constituted a transfer."  It then concluded that the
bankruptcy court's ruling on lack of fraudulent intent was not
clearly erroneous.

> [T]he definition of transfer is as broad as possible. Many of the potentially limiting words in current law are deleted, and the language is simplified. Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property.

S. Rep. No. 95-989, at 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5811.

Although the bankruptcy court referred to "the broad definition of transfer under Section 101 of the Bankruptcy Code," it then mentioned "constructive transfer," "possession," and transfers by "formal legal title" without explaining how these concepts informed its ultimate determinations about what was or was not transferred between Childrens Dental and Lowell Dentistry. For instance, notwithstanding the court's adoption of certain proposed findings and stipulations,[6] it remains unclear what property remains "available to the Trustee for liquidation." Particularly unhelpful is the court's reference to "patients' files, records, et cetera" (emphasis added).[7] To leave so uncertain what the court finds to be property of Childrens Dental's estate is unacceptable.

---

[6] Of particular relevance are the adopted findings that Watman did not take any action to transfer title or ownership of the office furnishings or equipment, and that the computer of Childrens Dental was stored in the basement and remains available for the Trustee.

[7] As an aside, we note that, to the extent that the bankruptcy court found that patient records belong to the patient, Mass. Gen. Laws ch. 112, § 12CC may suggest otherwise. Section 12CC states that a patient is only entitled to inspect his or her records and to obtain a copy of them. See Mass. Gen. Laws ch. 112, § 12CC.

-14-

More importantly, the bankruptcy court never addressed the central question in its transfer analysis -- the going concern value of Childrens Dental independent of Watman and whether that was "property"[8] that was transferred out of Childrens Dental's estate by the creation of Lowell Dentistry.  Interestingly, in a footnote in its opinion, the BAP attributed to the bankruptcy court a seemingly nonexistent finding on this issue:

> While another Court may have found, based upon the same record, that despite the patients' control of their records, the dental practice had an independent going concern value, we cannot say that the Bankruptcy Court's contrary determination in the instant case rises to the level of clear error.

We are at a loss to identify any such "contrary determination" in the bankruptcy court's decision.  Our careful reading of the bench ruling, along with the underlying stipulations and proposed findings which the court adopted, reveals no sign of any findings relating to Childrens Dental's independent going concern value and the effect of Lowell Dentistry's formation on that going concern

---

[8] In the analogous context of voidable fraudulent transfers under what is now 11 U.S.C. § 548, we have held that the term "property" in the Bankruptcy Act "'has been construed most generously' for the purpose of protecting the creditors of the bankrupt." Robinson v. Watts Detective Agency, 685 F.2d 729, 734 (1st Cir. 1982) (quoting Segal v. Rochelle, 382 U.S. 375, 379 (1966)). "Generally speaking, it is anything of value - anything which has debt paying or debt securing power." Id. (internal quotation marks omitted); see also Glosband v. Watts Detective Agency, Inc., 21 B.R. 963, 971 (D. Mass. 1981) (holding that the term "property" as invoked in the definition of "transfer" should be interpreted "most generously to incorporate anything of value which but for the transfer might have been preserved for the trustee to the ultimate benefit of the bankrupt's creditors" (internal quotation marks omitted)).

-15-

value. The bankruptcy court never determined whether assets such as Childrens Dental's employees, patient files, office space, goodwill and overall going concern value[9] were (a) properly considered property of Childrens Dental such that they would have been included in the estate for the benefit of creditors; and (b) if so, whether they were transferred to Watman or Lowell Dentistry.

To be sure, Watman was free to resign from Childrens Dental. But it does not necessarily follow that he was free to take the practice with him. He stayed in the same office, retained all ten employees, continued to use the same equipment, and arguably succeeded in retaining the majority of Childrens Dental's approximately 3000 patients. At a minimum, these facts suggest the possibility that Watman transferred by possession the goodwill and going concern value from Childrens Dental to Lowell Dentistry without paying any consideration. See S. Rep. No. 95-989 at 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5811 ("[P]ossession, custody, and control are interests in property.").

There is substantial support in bankruptcy case law for the proposition that such intangible assets as goodwill and overall

_____

[9] Goodwill is "all that goes with a business in excess of its mere capital and physical labor, such as reputation for promptness, fidelity, integrity, politeness, business sagacity and commercial skill in the conduct of its affairs, solicitude for the welfare of customers and other intangible elements which contribute to successful commercial adventure." Martin v. Jablonski, 149 N.E. 156, 159 (Mass. 1925). Where "the resources of an ongoing enterprise are used in conjunction with each other they may well have a collective value, as so used, in excess of the sum of the values of the individual resources taken separately." Glosband, 21 B.R. at 975. That collective value is referred to as "going concern value." Id.

-16-

going concern are valuable and should be preserved for the bankrupt estate. For instance, in <u>Robinson</u> v. <u>Watts Detective Agency</u>, 685 F.2d 729 (1st Cir. 1982), we stated in the context of a voidable fraudulent transfer case:

> The [bankruptcy] court engaged in a lengthy in-depth analysis of the transfers of the guards, customers and goodwill and held that they were each susceptible of having value and, therefore, of being "property" in a bankruptcy setting. We agree. We add, however, that what was transferred . . . amounted in the aggregate to a transfer of the business itself. The whole was greater than its parts.

<u>Id.</u> at 734; <u>See</u> <u>also</u> <u>FitzSimmons</u> v. <u>Walsh</u> (<u>In re FitzSimmons</u>), 725 F.2d 1208, 1211 (9th Cir. 1984) ("To the extent that the law practice's earnings are attributable not to [sole practicioner-debtor's] personal services but to the business' invested capital, accounts receivable, good will, employment contracts with the firm's staff, client relationships, fee agreements, or the like, the [post-petition] earnings of the law practice accrue to the estate."); <u>First Prof'l Bank, N.A.</u> v. <u>Wrobel</u> (<u>In re Mullen</u>), 200 B.R. 352, 356-57 (C.D. Cal. 1996) (recognizing possibility of property interest in goodwill of dissolved business where former principals were profiting from that goodwill in new business endeavor); <u>Sheppard's Dental Ctrs., Inc.</u> v. <u>Southwest SDC, Inc.</u> (<u>In re Sheppard's Dental Ctrs., Inc.</u>), 65 B.R. 274, 278 (S.D. Fla. 1986) (treating intangible assets such as patient and employee relationships, contractual relationships with landlords, and goodwill as having value and as property of the bankrupt estate); <u>Glosband</u>, 21 B.R. at 972, 975 (stating that "goodwill is by

definition something of value in a going concern which attaches by reason of its name, location, skill, reputation and the like, [and] clearly is 'property' for purposes of this opinion" and that "[i]t is possible that the expectancy of a continued employer-employee relationship, just as the prospect of a continued landlord-tenant relationship, is something of value which ought to be preserved for the benefit of the trustee").  In the face of these precedents, Groman understandably persists with his argument that "[w]hether or not Debtor transferred legal title to the property of Childrens Dental, he effectively transferred the entire dental practice to Lowell Dentistry in violation of §§ 727(a)(2) and 727(a)(7)."

The bankruptcy court's analysis of the indicia of fraud was incomplete, limited as it largely was to the absence of secrecy and Watman's reliance on the advice of counsel.  Left unexamined was the significance of the alleged transfer without consideration of the going concern value of Childrens Dental to Lowell Dentistry. That omission, in turn, left unexamined such familiar indicia of fraudulent intent as (1) the retention of possession, benefit or use of the property in question; (2) the lack or inadequacy of consideration for the transfer; (3) the financial condition of the party sought to be charged both before and after the transaction at issue; (4) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (5) the shifting of assets by the debtor to

a corporation wholly controlled by him.  See Kaiser, 722 F.2d at 1582-83.

Accordingly, we remand this case to the bankruptcy court for adequate findings on these issues.  See In re Healthco, 132 F.3d at 108 n.5 ("[I]f a reviewing court determines that a bankruptcy court's findings are too indistinct, it may decline to proceed further and remand for more explicit findings."); FitzSimmons, 725 F.2d at 1212 (remanding case to bankruptcy court to ascertain the portion of the law practice's post-petition earnings that accrue to the bankrupt estate).  The bankruptcy court is free to take more evidence if deemed necessary to carry out this mandate.  We do not retain jurisdiction of this case.  See Clauson v. New England Ins. Co., 254 F.3d 331, 342 (1st Cir. 2001).

**V.**

For the reasons stated herein, we vacate and remand for further proceedings consistent with this opinion.