**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 03-1862                    IN RE PHILLIPPE CHARLES,

Debtor.

WELLS FARGO HOME MORTGAGE, INC.,

Plaintiff, Appellant,

v.

PHILLIPPE CHARLES; DOREEN B. SOLOMON,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, Senior U.S. District Judge]

Before
Torruella and Lipez, Circuit Judges,
and Lisi*, District Judge.

Lawson Williams with whom Shapiro & Kreisman was on brief for appellant.
Richard S. Hackel for appellee.
Doreen Solomon, Chapter 13 Trustee.

March 15, 2004

*Of the District of Rhode Island, sitting by designation.

**LISI**, **District Judge**.  Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), appeals from a district court order denying an appeal from a determination of the United States Bankruptcy Court for the District of Massachusetts.  The bankruptcy court denied two motions filed by appellant: (1) a motion to approve a stipulation between Wells Fargo and the debtor, Phillippe Charles ("Charles"); and, (2) an "assented to" motion to enjoin the debtor from encumbering certain real property located at 33 Wellington Hill Street, Mattapan, Massachusetts, and to vacate a previously entered discharge order as it pertained to Wells Fargo's interest in the Mattapan realty.  We affirm.

## I.

In April 1996, Charles filed a voluntary Chapter 13 petition.[1]  An order confirming the debtor's Chapter 13 plan was entered by the bankruptcy court on July 31, 1997.  Under the confirmed plan, Charles was to make monthly payments to the Chapter 13 trustee.  A portion of each payment was to be applied toward the secured claim held by Lehman Capital Corporation ("Lehman"), Wells Fargo's predecessor in interest.  Lehman's claim was secured by a mortgage on the Mattapan realty.  Also, the debtor was to make a final "balloon" payment to Lehman.  The order provided in pertinent part:

---

[1] See 11 U.S.C. §§ 1301-1330.

d) Debtor shall make payments totaling $97,350 to the Trustee, which shall constitute payments toward the secured claim of Lehman Capital Corporation. Debtor shall make a final "balloon payment" in the exact amount of $64,565.40 (or such other amount as may be hereafter stipulated to between the parties and approved by this Court). This payment may be made directly by debtor to creditor and is not required to be paid through the Chapter 13 Trustee. Trustee must receive evidence of this "balloon" payment from Debtor and confirmation of payment from Creditor before Debtor will be deemed to have fully [complied] with this provision of this Order. No Order for Discharge shall otherwise enter.

e) Upon the entry of an Order of Discharge under 11 USC Section 1328, the discharge so entered shall constitute a discharge of the above referenced secured mortgage claim.

Order of Confirmation, C.A. No. 96-12305-JNF (Bankr. D. Mass. July 31, 1997).

In June 2001, after Charles failed to make the final balloon payment in accordance with the confirmation order, Wells Fargo filed a motion for relief from the automatic stay and for leave to foreclose the mortgage on the Mattapan realty. The motion was granted on July 3, 2001. Charles then filed a motion for reconsideration of the July 3 order and a motion to refinance the Mattapan property.

In October 2001, during the pendency of the debtor's motions, Charles and Wells Fargo entered into a stipulation pertaining to Charles' outstanding obligation. Under the stipulation, Charles was to refinance the Mattapan realty on or

before November 17, 2001. From the proceeds of the refinancing, $71,000.00 was to be remitted to Wells Fargo in full satisfaction of Charles' obligation to the company.

The refinancing transaction was closed on October 29, 2001. The debtor's attorney, Michael G. McDonald ("McDonald"), served as settlement agent for the new mortgage lender, Long Beach Mortgage Company. Although McDonald retained $71,000.00 of the loan proceeds for the purpose of disbursing those funds to Wells Fargo, he failed to do so.

On or about April 15, 2002, more than five months after the closing, McDonald tendered a check, drawn on either his client trust or business account,[2] in the amount of $71,000.00 to Wells Fargo. The check subsequently was dishonored by the drawee financial institution for the reason that there were insufficient funds in the account.

On May 1, 2002, Charles, through McDonald, filed a motion to vacate the bankruptcy court's July 3, 2001 order granting Wells Fargo relief from the automatic stay. The motion was assented to on Wells Fargo's behalf by its attorney, who, apparently, lacked

---

[2]It is unclear from the record whether following settlement of the refinancing transaction McDonald deposited and maintained the $71,000.00 in his client trust account. That issue is not before us for determination. However, we note that Rule 1.15 of the Massachusetts Rules of Professional Conduct requires that a lawyer maintain funds belonging to clients or third parties in a trust account, separate from the attorney's own funds.

-4-

knowledge of the check's dishonor.[3]    The motion provided in pertinent part:

> 1.    The Debtor[']s counsel has provided Shapiro and Kreisman [Wells Fargo's counsel] with a check in the amount of $71,000.00 for the balloon payment of the bankruptcy.
>
> 2.    The Debtor has therefore completed it's [sic] debt to the creditor Wells Fargo in full according to the Confirmed Chapter 13 Plan for bankruptcy.

C.A. No. 96-12305-JNF (Bankr. D. Mass. May 1, 2002).   On May 3, 2002, the bankruptcy court granted the motion and vacated its July 3, 2001 order.

On June 21, 2002, the Chapter 13 trustee submitted a report and accounting and requested the debtor's discharge.   An order discharging Charles was entered on that same date.   The trustee's final report and account was filed on August 12, 2002. The trustee was discharged on September 16, 2002.   As of that date, Wells Fargo had not provided the bankruptcy court with notice that the debtor's obligation had not been satisfied.

Thereafter, on September 19, 2002, Wells Fargo requested a hearing "relative to Debtor's failure to satisfy plan obligations" and "for determination of manner in which outstanding

---

[3]Wells Fargo received notification of the check's dishonor on or before May 7, 2002.   However, according to the company's attorney, that information was not communicated by Well Fargo's cashiering department to its bankruptcy department, or to its counsel, until late-June 2002, following entry of the bankruptcy court's June 21, 2002 debtor discharge order.

obligations will be satisfied." By that date, McDonald had tendered a second check which had also been dishonored.

A hearing was conducted by the bankruptcy court on November 14, 2002. McDonald appeared as counsel for Charles. McDonald represented to the court that funds, including the $71,000.00 in refinancing proceeds that were designated for payment to Wells Fargo, had been misappropriated from his client trust and business accounts during his extended absence from his law office.[4]

At the hearing, McDonald told the court that he personally planned to satisfy the Wells Fargo obligation by refinancing some commercial property and that he anticipated completing the process within 45 to 60 days. Counsel for Wells Fargo agreed to provide McDonald with 60 days within which to satisfy the outstanding obligation. The court directed counsel to submit a proposed order reflecting that agreement.

On November 14, apparently following the hearing, Wells Fargo filed its "assented to" motion to enjoin the debtor from encumbering the Mattapan property and to vacate the discharge order as it pertained to Wells Fargo's interest in the realty. Wells Fargo sought the requested relief pending satisfaction of the outstanding obligation. McDonald assented to the motion on Charles' behalf. The bankruptcy court scheduled a hearing on the

---

[4]McDonald cited his spouse's death and his own serious illness as the reason for his absence.

motion for November 20, 2002.

On the day of hearing on the motion to enjoin/vacate, Wells Fargo filed the second motion at issue in the instant appeal, the motion to approve a stipulation between Wells Fargo and Charles. The stipulation was signed by McDonald on Charles' behalf and provided, in pertinent part:

> 1.  Debtor's counsel, Michael McDonald, shall complete payment to Wells Fargo Home Mortgage, Inc[.] ("Wells") of $71,000 within 60 days of the date hereof.
> . . .
> 3.  Debtor agrees that from the date hereof until the date of satisfaction of the obligation to Wells through payment of funds referred to above, debtor and anyone acting on his behalf or at his direction shall not undertake to transfer, encumber or otherwise diminish the interest held by debtor in the property that is the subject of the payment obligation referred to above, 33 Wellington Hill Street, Mattapan, Massachusetts.

C.A. No. 96-12305-JNF (Bankr. D. Mass. Nov. 20, 2002).

During the November 20, 2002 hearing, Charles stated that, up until that hearing, he had been unaware that McDonald had not satisfied the Wells Fargo obligation.  Further, Charles denied that he had authorized McDonald to execute the stipulation on his behalf.

Under oath, McDonald admitted that he had not consulted with Charles before assenting to either the motion to enjoin/vacate or to the stipulation.  Moreover, contrary to the representation that he had made to the court during the November 14 hearing,

-7-

McDonald acknowledged that he had never informed Charles that the $71,000.00 obligation had not been satisfied.

The bankruptcy judge determined that Charles' assertion that he had no knowledge of the non-satisfaction of the Wells Fargo obligation was credible. The court denied both the motion to enjoin/vacate and the motion to approve the stipulation. The court stated: "Clearly . . . Mr. McDonald had no authority from Mr. Charles to sign those. They were inconsistent–they were not just inconsistent. They were patently opposed to Mr. Charles's interests."

Wells Fargo appealed the bankruptcy court's denial of the motions to the district court. On June 2, 2003, the district court, concluding that the bankruptcy court had not abused its discretion in denying either motion, denied the appeal. This appeal followed.

## II.

On appeal, we directly review the bankruptcy court's decision. In re Watman, 301 F.3d 3, 7 (1st Cir. 2002).

The issue presented for our determination is a narrow one: Whether the bankruptcy court abused its discretion in denying the motion to enjoin/vacate and the motion to approve the stipulation. See In re Weinstein, 164 F.3d 677, 686 (1st Cir. 1999).

The bankruptcy court premised its denial of both motions

on its determination that Charles had not assented to either motion and that the relief sought in the unauthorized motions was contrary to the debtor's best interests. We examine the bankruptcy court's factual findings for clear error and review its conclusions of law de novo. In re Watman, 301 F.3d at 7.

The bankruptcy court's finding that the debtor had not authorized McDonald to execute the motions on his behalf is amply supported by the record. Charles denied knowing that the Wells Fargo obligation had not been satisfied and asserted that he had neither seen nor assented to the pleadings in issue. The debtor's representations to the court were corroborated by McDonald's testimony that he had neither informed his client that the obligation had not been satisfied nor obtained Charles' authority to assent to Wells Fargo's motion to enjoin/vacate or to agree on Charles' behalf to Wells Fargo's proposed stipulation.

Further, the bankruptcy court's determination that the relief sought by Wells Fargo through the motions was contrary to Charles' interests is clearly supported by the record. The debtor previously had obtained a discharge of his obligation to Wells Fargo. In furtherance of that objective, Charles had refinanced the Mattapan property, thereby incurring additional indebtedness and an additional encumbrance on the realty. McDonald acquired a portion of the loan proceeds, $71,000.00, in trust, for payment to Wells Fargo but, in contravention of his obligations under Rule

1.15(b) of the Massachusetts Rules of Professional Conduct, failed to promptly deliver those funds to the company. The motions, if granted, would have prohibited Charles from encumbering or transferring the Mattapan realty until such time as McDonald satisfied his obligations to Wells Fargo. Further, the result sought by Wells Fargo and purportedly agreed to by Charles would have deprived the debtor of the benefits of the discharge order previously entered by the bankruptcy court.

Because the bankruptcy court's findings that the motions were not authorized by the debtor and that they were contrary to his best interests were not clearly erroneous, the bankruptcy court did not abuse its discretion in denying the motion to enjoin/vacate and the motion to approve the stipulation on that basis.[5]

## III.

For the above reasons, we uphold both the bankruptcy court's denial of the motions and the district court's affirmance of that decision.

**Affirmed**.

---

[5]Wells Fargo's assertion to the contrary notwithstanding, whether the debtor had complied with the confirmation plan was not an issue before the bankruptcy court for determination on November 20, 2002 and, accordingly, is not before this court for consideration on appeal.

-10-