# United States Court of Appeals
## For the First Circuit

No. 05-2687

IN RE: AARON H. WATMAN

Debtor.

AARON H. WATMAN,

Debtor, Appellant,

v.

LAWRENCE GROMAN,

Creditor, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Peter J. Haley, with whom Leslie F. Su and Gordon Haley LLP were on brief, for appellant.
Joseph S.U. Bodoff, with whom Evan Slavitt and Bodoff & Slavit LLP were on brief, for appellee.

August 21, 2006

**LIPEZ**, **Circuit Judge**.  Debtor Aaron H. Watman appeals the bankruptcy court's denial of his discharge of indebtness based on its finding that he fraudulently transferred property under 11 U.S.C. § 727(a)(2)(A) and (a)(7).  This is the second time an appeal in this case has come before us.  In 1999, creditor Lawrence Groman initiated this adversary proceeding objecting to Watman's discharge.  After a trial, the bankruptcy court entered a judgment in favor of Watman, and the Bankruptcy Appellate Panel ("BAP") affirmed.  In Groman v. Watman (In re Watman), 301 F.3d 3 (1st Cir. 2002) ("Watman I"), we vacated the judgment and remanded the case for further proceedings in the bankruptcy court.  Specifically, we held that the bankruptcy court failed to consider fully the extent of the transferred property and several indicia of fraudulent intent.  On remand, the bankruptcy court reconsidered its findings and ultimately found in favor of Groman, denying Watman's discharge.  On appeal, the BAP remanded the case for additional findings, which the bankruptcy court provided, again denying Watman's discharge.   Watman filed another appeal, which Groman elected to present to the district court pursuant to 28 U.S.C. § 158(c)(1)(B).  The district court affirmed the bankruptcy court's decision.  Watman now appeals to us, arguing that the bankruptcy court erred in both its factual findings and its manner of inquiry on remand following our decision in Watman I.  After careful review, we affirm.

-2-

## A. Factual background

We restate the facts of this case, as described in Watman I, 301 F.3d at 3-7. Watman, a dentist, joined Childrens Dental Associates of Lowell ("Childrens Dental") in April 1988. At that time, Groman, also a dentist, was the sole shareholder, officer, and director of Childrens Dental. The parties agreed that Watman would be given the opportunity to purchase fifty percent of the practice at the end of one year if the two men worked well together. Consistent with that plan, at the end of his first year with Childrens Dental, Watman entered into an agreement to pay Groman on a monthly basis for ten years in exchange for a fifty percent ownership stake in the practice. In 1992, Watman agreed to purchase the other fifty percent of the practice from Groman, and the payment period was extended an additional ten years to cover the other half of the purchase price. Watman made the monthly payments to Groman until September of 1997, when Watman claimed difficulties in making the payments. In response, Groman agreed to reduce the monthly payments from $ 5,600 to $ 3,000.

Watman made only two of the reduced monthly payments. In April 1998, Groman filed suit against Watman and Childrens Dental as joint obligors for the remaining balance owed him. On December 14, 1998, Groman obtained a judgment against Watman and Childrens

Dental in the amount of $ 437,918 in Middlesex Superior Court. Neither Watman nor Childrens Dental appealed that judgment.

In or about March 1999, Groman filed a complaint seeking the appointment of a receiver for Childrens Dental. A hearing on the appointment of a receiver was scheduled for March 17, 1999 but was continued by agreement of counsel to March 24, 1999.

On March 18, 1999, Watman wrote thirty-seven checks from the Childrens Dental checking account, totaling $ 42,011.49. He recorded these transactions in Childrens Dental's books. Of that total, $ 14,702.02 went to prepayments of Childrens Dental's anticipated expenses for the month of April, including office rent, equipment rent, health insurance, and maintenance. Although payroll was typically paid out every two weeks, Watman caused payroll withdrawals to be made from Childrens Dental's bank account on March 10, 1999 and March 18, 1999 (the day after the original date of the receivership hearing). On March 19, 1999, on the advice of counsel, Watman sent a letter of resignation to Michael Dana Rosen, counsel for Childrens Dental, terminating his employment immediately. On March 22, 1999, Watman filed his Chapter 7 bankruptcy petition. On March 24, 1999, Childrens Dental filed its Chapter 11 petition.[1] At the time that these petitions were filed, Watman was the sole officer and director of Childrens

---

[1] According to Rosen's testimony at trial, Groman intended to object to the confirmation of any Chapter 11 plan. The bankruptcy judge sua sponte converted the Childrens Dental case to Chapter 7.

Dental.  At the time of filing, Childrens Dental had cash in bank accounts in the amount of approximately $ 30,000 and accounts receivable of about $ 69,000.  These assets were disclosed in the bankruptcy schedules and turned over to the bankruptcy trustee.  On or about March 25, 1999, Watman informed Lowell Doctors Park,[2] from whom Childrens Dental was renting its office space, that Childrens Dental would be terminating its occupancy of the premises.

From March 24, 1999 through March 31, 1999, Watman operated a dental practice under his own name at the office space that had been occupied by Childrens Dental at 75 Arcand Drive, in Lowell, Massachusetts (75 Arcand Drive location), using the same furniture and equipment that Childrens Dental had used. Watman offered the employees of Childrens Dental positions in his practice on the same terms as Childrens Dental was employing them.  Then, on March 31, 1999, Lowell Dentistry for Children, P.C. ("Lowell Dentistry") was incorporated and began operations out of the same 75 Arcand Drive location.  The corporate documentation to form Lowell Dentistry had been prepared in January 1999 by the law firm of Devine, Millimet & Branch.  Childrens Dental paid the cost of these services from a retainer that it had paid to that firm. Watman became, and continues to be, the president, sole shareholder and director of Lowell Dentistry.  Most of Childrens Dental's 3000

---

[2]Lowell Doctors Park is a limited partnership in which Watman had a 12.5 percent interest.

patients became patients of Lowell Dentistry when Childrens Dental ceased operating.

On August 27, 1999, Groman filed a complaint, alleging, inter alia, that Watman's actions warranted a denial of his discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(7). Watman subsequently moved to dismiss Groman's complaint for failure to state a claim under Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure. That motion was granted by the bankruptcy court. On appeal, the BAP reversed the bankruptcy court's dismissal of the § 727 objections to discharge and remanded for a trial on the merits. After trial, the bankruptcy court entered judgment in favor of Watman. On appeal, the BAP affirmed the judgment of the bankruptcy court. Groman appealed, and we vacated the judgment of the bankruptcy court in Watman I.

**B. Watman I and subsequent procedural history**

During the bankruptcy court proceedings and on appeal, Groman argued that Watman's transfer of the assets of Childrens Dental to Lowell Dentistry -- including patient records, office space, equipment, and employees -- "shifted all the goodwill of Childrens Dental to Lowell Dentistry, stripped Childrens Dental of its aggregate value as a going concern, and eliminated its ability to generate income for the estate, leaving Groman with an empty shell at Childrens Dental (save approximately $ 99,000 in cash and

accounts receivable[]) against which to pursue collection of his $ 437,918 judgment."  Watman I, 301 F.3d at 9.  For his part, Watman argued that he formed Lowell Dentistry to preserve the assets of Childrens Dental so that he could pay the debts to Groman, and explained that he did so relying on advice of counsel. The bankruptcy court, noting that Watman did not conceal his actions and emphasizing Watman's claim that he relied on counsel's advice, initially concluded that Groman had not established Watman's "intent to hinder, delay, or defraud" under 11 U.S.C. § 727(a)(2).

In reviewing the bankruptcy court's reasoning, we found it problematic and incomplete in several respects.  We noted that Watman's claim that he formed Lowell Dentistry to preserve the assets of Childrens Dental "was never memorialized in writing, is not in any way referenced in any written memoranda, and was not reported in Childrens Dental's bankruptcy schedules."  Watman I, 301 F.3d at 9.  We also observed that the bankruptcy court had not accounted for the fact that the assets of Childrens Dental were transferred to Lowell Dentistry without consideration, and had not considered whether several other indicia of fraud were evident in this case.  See id. at 12-13.  We therefore remanded the case for further findings.  Id.

On remand, the bankruptcy court held a status conference at which the parties agreed that no further evidence was needed to

make the findings on remand. The bankruptcy court gave the parties an opportunity to submit further proposed findings of fact and conclusions of law. After reviewing those submissions and the record, the bankruptcy court found in favor of Groman on Count II of his complaint, denying Watman a discharge pursuant to 11 U.S.C. § 727(a)(7).[3] On appeal, the BAP found that the bankruptcy court addressed some, but not all, of the points mentioned in our Watman I decision and thus remanded for additional findings. The

---

[3] In Count I of his complaint, Groman objected to the discharge under 11 U.S.C. § 727(a)(2), based on Watman's transfer of the property of Childrens Dental. The bankruptcy court dismissed that claim, holding that § 727(a)(2) applies to the fraudulent transfer of property in which the debtor had a direct proprietary interest, not the transfer of the property of a corporation in which the debtor may have derivative interest. See Riumbau v. Colodner (In re Colodner), 147 B.R. 90, 93 (Bankr. S.D.N.Y. 1992); see also MCorp Management Solutions, Inc. v. Thurman (In re Thurman), 901 F.2d 839, 841 (10th Cir. 1990) ("Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which the debtor has a direct proprietary interest."). Instead, the bankruptcy court denied the discharge under 11 U.S.C. § 727(a)(7). A court may deny a debtor's discharge under § 727(a)(7) if the debtor has committed an act specified in § 727(a)(2) in connection with a bankruptcy case "concerning an insider." 11 U.S.C. § 727(a)(7). Where the debtor is an individual, the term "insider" is defined to include a "corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(A)(iv). In Count II of his complaint, Groman alleged that Childrens Dental is an "insider" of Watman and that Watman fraudulently transferred the property of Childrens Dental. As we noted in Watman I, "[i]n light of Watman's status as sole officer, shareholder, and director of Childrens Dental, Childrens Dental clearly qualifies as an 'insider' of Watman for purposes of § 727(a)(7), and Watman does not argue otherwise." Watman I, 301 F.3d at 8. In challenging Groman's § 727(a)(7) claim on appeal, Watman focuses on whether his actions concerning Childrens Dental are prohibited acts under § 727(a)(2). We thus examine whether Groman has established the elements of § 727(a)(2) with respect to the property of Childrens Dental.

bankruptcy court supplemented its findings but came to the same conclusion. Watman filed another appeal, which Groman elected to present to the district court pursuant to 28 U.S.C. § 158(c)(1)(B). The district court affirmed the decision of the bankruptcy court. This second appeal to us ensued.

## II.

We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. See Davis v. Cox (In re Cox), 356 F.3d 76, 82 (1st Cir. 2004).[4] Although the district court reviewed the bankruptcy court's decision in this case, we "exhibit no particular deference to the conclusions of . . . the district court." Brandt v. Repco Printers & Lithographics, Inc. (In re HealthCo Int'l, Inc.), 132 F.3d 104, 107 (1st Cir. 1997).

In this appeal, Watman asserts that the bankruptcy court clearly erred in its findings on (a) what property of Childrens Dental was transferred to Lowell Dentistry and (b) whether Watman acted with intent to hinder, delay, or defraud his creditors. Watman also argues that the bankruptcy court erred in its approach to the inquiry on remand by reversing some of its initial factual findings without hearing additional evidence and exceeding the scope of remand. We address these arguments in turn.

_____

[4] We discuss in more detail our approach to reviewing the bankruptcy court's findings of indicia of fraud in Part II.A.2.

-9-

**A.    The bankruptcy court's findings of fraudulent transfer under 11 U.S.C. § 727(a)(2)(A)**

On remand, the bankruptcy court concluded that Watman is precluded under 11 U.S.C. § 727 (a)(7), applying § 727(a)(2)(A), from receiving a discharge in Chapter 7 bankruptcy.   Section 727(a)(2)(A) states:

> The court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed [] property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).  We explained in Watman I that

> in order for a debtor to be denied a discharge under § 727(a)(2), an objector must show by a preponderance of the evidence that (1) the debtor transferred, removed, destroyed, mutilated, or concealed (2) his or her property (or the property of the estate if the transfer occurs post- petition) (3) within one year of the petition filing date (for prepetition transfers) (4) with intent to hinder, delay or defraud a creditor.

301 F.3d at 7.  Groman, as the party requesting the denial of the discharge in this case, has the burden of establishing these elements.  Fed. R. Bankr. P. 4005; see also Watman I, 301 F.3d at 7.

**1. Property of Childrens Dental transferred to Lowell Dentistry**

Under the first two elements of the fraudulent transfer test under 11 U.S.C. § 727(a)(2), as applicable here under § 727(a)(7), Groman must show that Watman transferred or concealed property that belonged to Childrens Dental. The bankruptcy court, in its initial decision, concluded that there "was no transfer here in the customary sense" and that "transfers, if they did take place at all, were not of the formal legal title nature, and to the extent that patients' files, records, et cetera, are property of the estate . . . they haven't been transferred." In Watman I, we concluded that this analysis was inadequate. 301 F.3d at 10. Specifically, we questioned whether the bankruptcy court applied the correct definition of "transfer" in its analysis, noting that bankruptcy law defines "transfer" broadly to include a transfer of possession, custody, or control even if there is no transfer of legal title. See Watman I, 301 F.3d at 10 (discussing the legislative history of 11 U.S.C. § 101(54), which defines "transfer" (citing S. Rep. No. 989, 95th Cong. 27 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5813)); see also Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 498 (1st Cir. 1997) (noting the broad definition of "transfer" in bankruptcy law). We explained that the bankruptcy court should have determined whether "assets such as Childrens Dental's employees, patient files, office space, goodwill and overall going concern value were (a) properly

-11-

considered property of Childrens Dental such that they would have been included in the estate for the benefit of creditors; and (b) if so, whether they were transferred to Watman or Lowell Dentistry." 301 F.3d at 11-12 (footnote omitted).

On remand, the bankruptcy court concluded that Childrens Dental's "space, patient records, employees, and good will" were property of Childrens Dental and that they were transferred to Lowell Dentistry. The bankruptcy court noted that Watman "also used Childrens Dental's funds to prepay expenses that he knew he or a new corporation would incur." The bankruptcy court found that the only property not transferred and thus "remaining in [Childrens Dental's] estate for liquidation by its Chapter 7 Trustee consisted of accounts receivable, an obsolete computer that Lowell Dentistry originally used then stopped using at some point, furnishings, decorations, and a box of dental supplies of unknown value." The bankruptcy court concluded that Watman's actions thus harmed Childrens Dental's creditors.

Watman challenges these findings on two interrelated grounds. First, he argues that the bankruptcy court erred by failing to calculate the specific value of these assets. Second, he argues that the bankruptcy court's finding that Childrens Dental's assets had some value was clearly erroneous. Both of these arguments are specious.

-12-

### a. Calculating the value of the assets

The bankruptcy court was not required to calculate the precise value of the assets of Childrens Dental in order to determine whether those assets were "property" capable of being transferred in this context. The question of whether those assets were "property" capable of being transferred depends on whether they are "'<u>susceptible</u> of having value.'" <u>Watman I</u>, 301 F.3d at 12 (emphasis added) (quoting <u>Robinson</u> v. <u>Watts Detective Agency</u>, 685 F.2d 729, 734 (1st Cir. 1982)); <u>see</u> <u>also</u> <u>Robinson</u>, 685 F.2d at 734 (explaining that the term "property" in the context of transfers is defined generally as "anything of value -- anything which has debt paying or debt securing power"); <u>Glosband</u> v. <u>Watts Detective Agency, Inc.</u>, 21 B.R. 963, 971 (D. Mass. 1981) (holding that the term "property" in the context of transfers should be interpreted "'most generously' to incorporate anything of value which but for the transfer might have been preserved for the trustee to the ultimate benefit of the bankrupt's creditors" (quoting <u>Segal</u> v. <u>Rochelle</u>, 382 U.S. 375, 379 (1966))). Once the bankruptcy court determined that the assets of Childrens Dental had some value, it did not have to calculate the precise value.

### b. Whether Childrens Dental's assets had value

Watman essentially argues that the assets of Childrens Dental were valueless. He focuses much of his argument on whether the bankruptcy court properly determined the extent of Childrens

-13-

Dental's goodwill and going concern value independent of Watman's own practice. We need not reach those arguments, however, because the evidence demonstrates that other assets of Childrens Dental had value. As the district court aptly observed,

> Watman, both as a solo petitioner and as part of Lowell Dentistry, decided to operate at the same location, use the same furniture, equipment and supplies, employ the same employees (including an orthodontist and another dentist), retain the same patient records, and service the same patients as Childrens Dental. Before Watman filed for bankruptcy, he was willing to make monthly payments for these combined Childrens Dental assets.

In re Watman, 331 B.R. 502, 511 (D. Mass. 2005) (citations omitted). In addition, as the bankruptcy court noted, Watman "used Childrens Dental's funds to prepay expenses that he knew he or a new corporation would incur." Watman transferred these assets identified by the bankruptcy court precisely because they had value. If Watman had walked away from Childrens Dental, he would have had to expend resources to find a new location for his practice, buy new equipment, hire new employees, find new patients or encourage his old patients to follow him despite changes in location and employees, and develop new patient records or enter into some arrangement to get the old records. Instead, Watman simply transferred by possession these assets of Childrens Dental to Lowell Dentistry. We therefore affirm the bankruptcy court's finding that Childrens Dental's assets had value and that Watman

used those assets for his new practice.[5]  Given this finding, we conclude that Watman transferred the property of Childrens Dental to Lowell Property within the meaning of 11 U.S.C. § 727(a)(2)(A).[6]

### 2.  Intent to hinder, delay, or defraud a creditor

Under the last element of § 727(a)(2)(A), Groman had to convince the bankruptcy court that Watman acted with the intent to hinder, delay, or defraud his creditors.  Section 727 requires a showing of actual intent, not constructive intent.  Watman I, 301 F.3d at 8 (citing 6 Collier on Bankruptcy ¶ 727.02[3][a] (L. King ed., 15th ed. 2002)).  "Because a debtor rarely gives direct evidence of fraudulent intent, we have recognized that . . . intent to defraud a creditor can be proved by circumstantial evidence." Marrama v. Citizens Bank (In re Marrama), 445 F.3d 518, 522 (1st

---

[5] We therefore also affirm the bankruptcy court's finding that Lowell Dentistry's use of these assets harmed the creditors of Childrens Dental.  Watman's sole basis for challenging this finding is his contention that the assets of Childrens Dental had no value. We have rejected that claim and thus find no merit in Watman's argument.

[6] Because we affirm the bankruptcy court's conclusions on the basis of the findings mentioned above, we do not reach Watman's challenge to the bankruptcy court's finding that a noncompetition agreement between Watman and Childrens Dental was evidence of the independent value of Childrens Dental.  While the district court observed that a noncompetition agreement could support the inference of the goodwill and going concern value of a business independent from the practitioner under certain circumstances, the court also noted that the law on noncompetition agreements in the discharge context is in "disarray" and  that a finding on this issue was not necessary to support the judgment.

-15-

Cir. 2006). There are several objective indicia of fraudulent intent:

> (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the party sought to be charged both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by debtor to keep the transfer a secret.

Watman I, 301 F.3d at 8 (citations omitted). We have also recognized that "'[t]he shifting of assets by the debtor to a corporation wholly controlled by him is another badge of fraud.'" Id. (quoting Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1583 (2d Cir. 1983)).

Reviewing evidence of these indicia, we construe the grounds for discharge liberally in favor of the debtor. See Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987). Where the intent issue turns on the credibility and demeanor of the debtor, we typically defer to the bankruptcy court's conclusions. See Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997). The determination of actual intent is a factual finding and, "[i]n all events, we will affirm the bankruptcy court's findings of fact unless they appear to be clearly erroneous -- that is, unless we

-16-

are 'left with the definite and firm conviction that a mistake has been committed.'" Watman I, 301 F.3d at 8 (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)).

Watman asserts that the bankruptcy court ignored his claims that he acted on advice of counsel and did not conceal his actions. We reject that argument. The bankruptcy court did not ignore his claims; it simply found that other indicia of fraud were prevalent in the case. The court noted that Watman "took virtually all of [Childrens Dental's] assets, tangible and intangible, and transferred them to his new corporation," yet paid no consideration for the transfer. The bankruptcy court found that Watman's actions resulted in the diminution and possibly the complete elimination of the value of Childrens Dental as a whole. The court rejected Watman's testimony and the testimony of his attorney that Watman created Lowell Dentistry to "preserve the value" of Childrens Dental (on the theory that Lowell Dentistry could purportedly make payments to Childrens Dental) as "not credible," given the lack of any memorialization of such an arrangement. Instead, the court found that Watman created Lowell Dentistry "to get out from under his and [Childrens Dental's] obligation to Groman." The court recognized that "Watman's actions were not done in secret," but concluded that the fact "[t]hat they were not secretive, however, is not sufficient to overcome the conclusion that they were

-17-

intended to hinder, delay and defraud Groman." These findings are not clearly erroneous.

**B. The bankruptcy court's reconsideration of its initial findings**

Watman also challenges the bankruptcy court's approach to the inquiry on remand. First, Watman argues that the bankruptcy court exceeded the scope of the remand by addressing the fraudulent intent issue. Second, Watman asserts that the court should not have reversed its initial finding that he lacked the requisite intent, particularly in terms of its credibility determination, without hearing additional evidence. These arguments are unavailing.

Watman insists that the scope of our remand was limited to addressing the issue of the value of the transferred property, precluding reconsideration of the issue of fraudulent intent. However, we specifically noted in our first decision that remand was required because the bankruptcy court had "left unexamined . . . indicia of fraudulent intent." Watman I, 301 F.3d at 13. The bankruptcy court properly considered all of the issues that we identified on remand.

There was also nothing improper in the bankruptcy court's reversal of its findings on the intent issue without hearing any additional evidence. Our concern with its initial decision was the incompleteness of its analysis of the fraudulent intent issue. See id. at 12-13. In addition, we expressed our skepticism of Watman's

claim that he formed Lowell Dentistry in order to preserve the assets of Childrens Dental given the lack of any written memorialization of that arrangement. See id. at 8-9. On remand, the bankruptcy court considered all of the indicia of fraud in this case and reevaluated the testimony. Based on its complete analysis, the court reversed its credibility findings and its conclusion that Groman had not established Watman's intent to hinder, delay, or defraud his creditors.

In light of the bankruptcy court's incomplete analysis of the issues in its first decision and our remand "for adequate findings on these issues," Watman I, 301 F.3d at 13, the bankruptcy court acted properly in considering all of the evidence and reevaluating its findings accordingly. See Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation, 673 F.2d 315, 318 (10th Cir. 1982) (concluding that district court's reconsideration of its findings on remand was proper where appellate court had concluded that the initial findings were inadequate and incomplete); William G. Roe & Co. v. Armour & Co., 414 F.2d 862, 865 (5th Cir. 1969) (concluding that, where the appellate court had remanded for more specific findings, "it was . . . within the court's power on remand to find that it had been wrong the first time and reverse itself"). We discern no error in the bankruptcy court's approach or its conclusions.

**III.**

The legal dispute between these parties began with state court proceedings in 1998, which produced a judgment for Groman against Watman and Childrens Dental in the amount of $ 437,918. Then, after bankruptcy filings by Watman and Childrens Dental, the case has wound its way up and down the federal court system for the last seven years. With our affirmance here, one portion of this long saga may finally have come to an end -- Watman is not entitled to a discharge of his indebtedness to Groman. The bankruptcy court properly concluded that Watman transferred the property of Childrens Dental to Lowell Dentistry and that he acted with actual intent to hinder, delay, or defraud his creditors, in violation of § 727(a)(2). Its approach to our remand was appropriate, and the district court correctly upheld the decision.

Affirmed.