Haggerty, S. Jane, J.
This is a fraud and breach of contract action brought by the plaintiff, Lawrence Groman (“Groman”), to collect on a note originally co-signed by the defendant Aaron Watman (“Watman”) and Children’s Dental Associates of Lowell-Lawrence Groman, D.M.D., P.C. (“Children’s Dental”). Groman secured a judgment against Watman and Children’s Dental for the full outstanding amount of the note on December 14, 1998. Now he seeks to hold co-defendant Lowell Dentistry for Children, P.C. (“Lowell Dentistry") liable on the note as well under a theory of successor liability. Groman also alleges that Children’s Dental fraudulently transferred certain business assets to Lowell Dentistry in order to avoid its debt to Groman. This matter was tried without a jury in the Superior Court, Middlesex County. Based on the evidence presented at that trial, this court finds that there was a fraudulent transfer of Children’s Dental’s business assets to Lowell Dentistry in violation of G.L.c. 109A, §§5 and 6, and that the principles of successor liability apply so as to make Lowell Dentistry liable to Groman on the note.

FINDINGS OF FACT

Groman, a dentist, was the sole director, officer and shareholder of Children’s Dental when Watman, also a dentist, joined the practice in 1988. The two men agreed that, if they worked well together, Watman would be given the opportunity to purchase a fifty percent stake in the practice at the end of one year. In 1989, Watman entered into an agreement to pay Gro-man $5,600 per month for ten years in exchange for a fifty percent interest in the practice. In 1992, Wat-man agreed to purchase the remaining fifty percent, and the payment period was extended another ten years to cover the additional purchase price. Both Watman and Children’s Dental were obligors on the note to Groman.
In 1997, Watman requested a reduction in his monthly payments for the dental practice from $5,600 to $3,000 for the stated reason that Watman was experiencing financial difficulties. Groman agreed to the reduction and an extension of the payment period. Between September 1997 and April 1998, Watman made only two of the reduced monthly payments, at which time Groman brought suit against Watman and Children’s Dental. In December 1998, Groman obtained a judgment against Watman and Children’s Dental in the amount of $437,918. Watman acknowledged the debt and did not dispute the amount.
In January 1999, Watman met with his attorneys to prepare incorporation papers for Lowell Dentistry and a letter to Children’s Dental’s patients announcing that he was leaving Children’s Dental and that he would soon be operating under the name of Lowell Dentistry. In March 1999, Groman filed a complaint to appoint a receiver for Children’s Dental. A hearing on the appointment of a receiver was scheduled for March 17, 1999. Watman discussed with his attorney how to avoid a receivership. At the request of Watman’s counsel and with the agreement of Groman, the matter was continued to March 24,1999. On March 18,1999, Watman wrote in excess of $42,000 in checks drawn on Children’s Dental’s checking account, including pre-payment of office rental, dental equipment rental, malpractice insurance and monthly bills to Bell Atlantic, Citibank, ITT Hartford Insurance, Silent Radio and Chase Auto. Salary was not only pre-paid to Watman and the employees of Children’s Dental, but it was also in excess of amounts ordinarily paid to himself and the employees. Significantly, Children’s Dental did not make a payment to Groman, who held virtually all of the unsecured debt. Nor did Watman or his counsel ever approach Groman about a settlement. Given this evidence, I do not credit Watman’s testimony that he asked for the continuance in order to have time to work out a settlement.
On March 19, 1999, Watman sent a letter to Children’s Dental patients announcing that he was leaving Children’s Dental and that he would continue practicing under the name Lowell Dentistry. On March *360 22, 1999, Watman filed a Chapter 7 bankruptcy petition, and on March 24, 1999, Children’s Dental filed a Chapter 11 bankruptcy petition. At the time of these filings, Watman was the sole officer and director of Children’s Dental, and Children’s Dental had approximately $30,000 in cash in the bank and $69,000 in accounts receivable. The practice was profitable, and its gross revenues for the year prior to filing its bankruptcy petition were $697,538. Thus, at the time of its bankruptcy filing, Children’s Dental had a value far exceeding its liability to Groman, and was apparently sufficiently profitable to hire Watman’s wife at an annual salary of $12,500 for what was essentially a sham position.
From March 24 until March 31, 1999, Watman operated the dental practice under his own name. On March 31, 1999, Lowell Dentistry was incorporated. Watman became the sole officer, director and shareholder of Lowell Dentistry. Lowell Dentistry operated out of the same office space that Children’s Dental had used. It employed the same employees in the same positions, used the same furniture and equipment, and continued to treat almost all of Children’s Dental’s 3000 patients. As of 2007, Lowell Dentistry had approximately $1.2 million in gross revenues, and paid Watman an annual salary of approximately $223,000 for three days of work per week.
The evidence of the practice’s continued profitability, whether under the name of Children’s Dental or Lowell Dentistry, contradicts Watman’s claim that it was bankrupt. Furthermore, when, in July 1999, Groman asked Watman why he had filed for bankruptcy, Watman replied that he did not want to be saddled with his debt for the purchase of the practice for the rest of his life and he wanted a larger home. This was essentially an admission that Watman had intentionally created Lowell Dentistry as a means to shed the debts of Children’s Dental.

RULINGS OF LAW

Count I: Fraudulent Transfer in Violation of G.L.c. 109A, §6

Section 6(a) of the Uniform Fraudulent Transfers Act (UFTA) provides: “A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.”
There are thus four elements that Groman must prove to prevail on a claim under this section. He must show (1) a transfer by the debtor, Children’s Dental, (2) a debt owed to him by Children’s Dental that preceded the transfer, (3) that Children’s Dental did not receive a reasonably equivalent value in exchange for what it transferred, and (4) that Children’s Dental was insolvent at the time of the transfer, or became insolvent as a result thereof. This Court finds that Groman has proved each of these elements by a preponderance of the evidence.
Children’s Dental was a co-obligor with Watman on the note to Groman whereby Groman sold his stake in the practice to Watman. Children’s Dental incurred this obligation prior to the formation of Lowell Dentistry.
When Lowell Dentistry was incorporated, it inherited the office space formerly occupied by Children’s Dental, Children’s Dental’s furniture, its employees, its patient records and most of its 3000 patients. I agree with the Bankruptcy Court and the First Circuit “ ‘that Children’s Dental’s space, patient records, employees and good will’ were property of Children’s Dental and that they were transferred to Lowell Dentistry.” Watman v. Groman, 458 F.3d 26, 32 (1st Cir. 2006). As the First Circuit explained, it is not necessary, for the purposes of determining whether a transfer occurred, that the things transferred be susceptible of precise valuation. What is important is that those things are “susceptible of having value.” Groman v. Watman (In re Watman), 301 F.3d 3, 12 (1st Cir. 2002).
What Lowell Dentistry inherited from Children’s Dental was certainly susceptible of having value. “If Watman had walked away from Children’s Dental, he would have had to expend resources to find a new location for his practice, buy new equipment, hire new employees, find new patients or encourage his old patients to follow him despite changes in location and employees, and develop new patient records or enter into some arrangement to get the old records. Instead, Watman simply transferred by possession these assets of Children’s Dental to Lowell Dentistry.” Watman, 458 F.3d at 33. Despite the obvious value of these assets, Children’s Dental received no consideration for their transfer to Lowell Dentistry.
Nor does Children’s Dental appear to have received any consideration for the transfer of its good will to Lowell Dentistry. Contrary to Watman’s contentions, Massachusetts courts have recognized that good will in a medical or dental practice may inhere in the practice itself and not just in the individual practitioner. See Stefanski v. Gonnella, 15 Mass.App.Ct. 500, 502 (1983) (existence and value of good will upon dissolution of a partnership is a question of fact). Given the considerable price Watman paid for Children’s Dental — $5,600 per month for twenty years — and given that this purchase price did not entail ownership of the office space or the dental equipment used in the practice, it is reasonable to infer that the bulk of the value he was buying consisted of the business itself as a going concern, that is, its employees, clients, and the good will Groman had accumulated over two decades of working in the community.
There was evidence that, at the time of bankruptcy, Children’s Dental was a profitable practice with a value, as a going concern, at least equal to the out *361 standing debt to Groman. However, as a result of the transfer of Children’s Dental’s office lease, equipment lease, employees, furniture, patients, patient records, and good will to Lowell Dentistry, Children’s Dental’s remaining assets totaled only $99,000, thereby making it insolvent.
Groman has therefore demonstrated that Children’s Dental made a transfer of its assets to Lowell Denistry, that Children’s Dental owed him a debt which preceded that transfer, that Children’s Dental did not receive a reasonably equivalent value for the assets it transferred, and that the transfer caused Children’s Dental to become insolvent. As such, he has established a fraudulent conveyance in violation of Section 6 of the UFTA.

Count II: Fraudulent Transfer in Violation of G.L.c. 109A, §5

Section 5(a) of the UFTA provides: “A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation. (1) with actual intent to hinder, delay, or defraud any creditor of the debtor.”
Subsection (b) sets forth a list of factors to consider in determining the existence of “intent” as that word is used in subsection (a)(1). These include whether “(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor’s assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.”
Many of these factors, the so-called “badges of fraud,” apply to the facts here. First, per the discussion of successor liability below, Lowell Dentistry was nothing more than a mere continuation of Children’s Dental. Thus, while Children’s Dental technically did not retain possession or control of its assets, it effectively did so when it continued its business under the name Lowell Dentistry. Under these facts, it makes sense to treat Lowell Dentistry and Children’s Dental as one actor for the purposes of determining whether the debtor retained possession and control of the transferred assets. Second, before the transfer was made, Children’s Dental had been sued and Groman had secured a judgment against it for over $400,000. Third, there was evidence that Children’s Dental was very profitable, and the value of the business as a going concern — which was effectively what was transferred to Lowell Dentistry — dwarfed the value of Children’s Dental’s remaining assets after the transfer. Fourth, Children’s Dental essentially received zero value for what it transferred to Lowell Dentistry. Fifth, the transfer caused Children’s Dental to become insolvent.
Based on the above, I find that when Children’s Dental transferred its assets, in the form of its location, employees, client records, clients and good will, it did so with the intent to defraud its creditor, Gro-man. Therefore, that transfer was a fraudulent transfer in violation of Section 5 of the UFTA.

Count III: Successor Liability

Generally, “the liabilities of a selling predecessor corporation are not imposed upon the successor corporation which purchases its assets.” Milliken & Co. v. Duro Textiles, LLC., 451 Mass. 547, 556 (2008). However, a successor corporation will be liable for such debts where “ ‘(1) the successor expressly or impliedly assumes the liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.’ ” Id., quoting Guzman v. MRM/Elgin, 409 Mass. 563, 566 (1991).
Use of the disjunctive means that successor liability may be found where any one of these four prongs is satisfied. For the reasons stated above, prong four— fraudulent transaction — applies to this case, and therefore Lowell Dentistry is liable for Children’s Dental’s debt to Groman. Yet even if prong four did not apply, prongs two and three — de facto merger and mere continuation, respectively — also apply on these facts.

De Facto Merger

The theory of a “de facto merger” may apply in circumstances where “the ownership, assets and management of one corporation are combined with those of another,” National Gypsum Co. v. Continental Brands Corp., 895 F.Sup. 328, 336 (D.Mass. 1995). “The factors that courts generally consider in determining whether to characterize an asset sale as a de facto merger are whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock...; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller *362 ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation ... No single factor is necessary or sufficient to establish a de facto merger.” Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 359-60 (1997).
To find a de facto merger, it is not strictly necessary that the seller corporation formally dissolve. “Rather, the principles of successor liability will be imposed where a corporation ceases all of its ordinary business operations, which are assumed by another corporation, and liquidates its assets . . . When this occurs, the predecessor corporation, for all practical purposes, has ceased to exist.” Milliken & Co., 451 Mass. at 558.
Here, there was a clear continuation of Children’s Dental under the guise of Lowell Dentistry. Watman was the sole officer and director of Children’s Dental when it filed for bankruptcy, and he became the sole officer and director of Lowell Dentistry when it incorporated one week later. Lowell Dentistry employed the same individuals as Children’s Dental, operated out of the same office space, used the same furniture as had been used by Children’s Dental, and treated most of Children’s Dental’s 3000 patients. Children’s Dental essentially ceased to exist at this point. While it did not formally dissolve, in its tangible and intangible attributes it “became” Lowell Dentistry. Finally, Lowell Dentistry assumed the obligations of Children’s Dental necessary for the uninterrupted continuation of Children’s Dental’s normal business operations. Lowell Dentistry assumed the rental obligations of Children’s Dental for its office space, as well as for its dental equipment. It assumed the payroll obligations of Children’s Dental. Thus, at least three of the factors suggesting a de facto merger are present in this case. Therefore, I conclude that when Lowell Dentistry began to assume the operations and obligations of Children’s Dental, a de facto merger occurred and Lowell Dentistry became liable for the debts of Children’s Dental.

Mere Continuation

“The ‘mere continuation’ theory of successor liability ‘envisions a reorganization transforming a single company from one corporate entity into another.’ ” Milliken & Co., 451 Mass. at 557, quoting McCarthy v. Litton Indus., Inc., 410 Mass. 15, 21-22 (1991). “The indices of a ‘continuation’ are, at a minimum: continuity of directors, officers, and stockholders; and the continued existence of only one corporation after the sale of its assets.” McCarthy, 410 Mass. at 23. “The imposition of liability on the purchaser is justified on the theory that, in substance if not in form, the purchasing corporation is the same company as the selling corporation.” Id. at 22. “Similar to the considerations underlying a finding of ‘de facto merger,’ the factors characterizing a continuing corporation are traditional indicators, but no single factor is disposi-tive, and the facts of each case must be examined independently.” Milliken & Co., 451 Mass. at 558, citing 15 W.M. Fletcher, Cyclopedia of Corporations §7124.10, at 283-87.
Here, Watman continued as the sole officer and director of Lowell Dentistry. As with the analysis under the de factor merger theory, the word “existence” should be understood in a practical, rather than a technical, sense. For all practical purposes, Children’s Dental ceased to exist on March 24, 1999, but was reincarnated in all its essential attributes only one week later, this time under the name Lowell Dentistry. Therefore, I conclude that Lowell Dentistry was a “mere continuation” of Children’s Dental.

ORDER

It is hereby ORDERED that judgment enter for Lawrence Groman against Lowell Dentistry for Children, P.C. on Count III of the complaint in the amount of $437,319, plus interest running from December 14, 1998, and minus payments made on such amount to date. It is further ORDERED that judgment enter for Lawrence Groman that Aaron Watman and/or Children’s Dental fraudulently conveyed assets to Lowell Dentistry with a value of $437,319, plus interest running from December 14, 1998, and minus payments made on such amount. Finally, it is ORDERED that plaintiff shall submit an accounting of payments and a proposed judgment.